SUPREME COURT—IN EQUITY.

APRIL TERM—1876.

*Harris and Judd, J. J.*

JAMES I. DOWSETT ET AL. *vs.* KAPILAU.

A DEED which had never been in defendant's possession except temporarily for the purpose of sheltering the grantor's property from his creditors and not with the intention of passing the estate, was decreed to be cancelled.

OPINION BY HARRIS, J.

This is a bill in equity praying that a deed of conveyance of John Booth deceased, to defendant, dated July 29th, 1868, of certain premises on Smith's street, Honolulu, be declared null and void.

The petitioners are James I. Dowsett, an alleged creditor

J. I. Dowsett et al. *v.* Kapilau.

and also mortgagee of deceased, the intestate's administrator, Wahinealoha, widow, and heir to one-half intestate's property, and Sarah Berger and others, heirs to the other half.

There is no proposition more clearly established than that a voluntary conveyance binds parties and privies. See Jackson *vs.* Garnsey, 16 Johnson, 190, Osborne *vs.* Moss, 7 Johnson, 161, *et passim.*

The law is likewise plainly settled that a voluntary conveyance, not fraudulent in fact, is good as to subsequent creditors, though void as to antecedent creditors. 11th Wheaton, 1991, Hinds, lessee, *vs.* Longworth, Sexton *vs.* Wheaton, 8 Wheaton, 229, and a host of other authorities.

But if the conveyance is meant to defraud existing creditors, it will not protect the grantee against subsequent creditors. King *vs.* Wilcox, 11 Paige, 589, 22 Gratt, 330 (Va.), 43 Vermont, 48.

So that admitting that the conveyance under consideration is a voluntary one and intended to defraud creditors, it would be good against the grantor's heirs, and the question would arise as to whether Dowsett is a creditor. The settlement of which question is not particularly essential to this case, in the conclusion which we have reached. Dowsett had a claim of $200, which was secured by a mortgage of a date antecedent to the date of the record of the deed in question, and therefore is not affected by the deed; beyond this mortgage it does not appear that Dowsett was a creditor of Booth's at the time of Booth's decease, but he made some payments after Booth's decease which were voluntary payments and amount to $150, of which $85 are for mourning for the widow and funeral expenses; they would be binding probably on the administrator, if he had assets, but are hardly such as would entitle Dowsett to relief as a defrauded man by a bill to open up and examine the conveyances made by the deceased in his lifetime. And at all events the effect could reach no farther than to charge the estate with such sums as

might be recovered from the administrator, in this case a very inconsiderable sum.

But the bill asks that the deed in question be adjudged void and delivered up for cancellation.

It cannot be adjudged void by reason of fraud, since, as has been said before, even if fraudulent, it is good as against the heirs of the grantor, and the other petitioner is not entitled to this relief. But in order to bind the grantor or his heirs, the deed must have been delivered in the lifetime of the grantor; so that the question arises whether the deed was delivered by the grantor to Kapilau the defendant.

The deed is dated July 29th, 1868, was acknowledged before a notary public and was never recorded until after Booth's death. On the 28th of September of the same year, it was in the possession of the grantor, Booth, for on that day Booth mortgaged the property to Mr. Dimond, and Mr. Dimond saw the deed in Booth's hands and asked him about it and received an answer that it was a sham. On the 21st of October following, Kapilau came to the police station-house in Honolulu, claiming some personal property taken from the property in question on an execution against Booth, and Booth came with him, and this deed, now the subject of controversy, was among the papers that Kapilau had. It is very significant that Booth and Kapilau came together. Mahoe says that this defendant, Kapilau, told him that he had paid no money for the land, and that the deed had been made so that Booth could not mortgage the land, and that the defendant further told him that the deed had been taken from him by Booth and torn up. It is made to appear conclusively, that Booth was badly in debt and that he lived on the premises until the time of his death in like manner as he had done prior to the making of the deed, and the deed was not recorded until nearly three months after Booth's death, as has been said before.

Mrs. Long testifies that the plaintiff told her that he got

the deed from Booth's trunk after his decease, on the night of his decease.

Against this there is the testimony of Naluahi who testifies that he saw plaintiff give $500 to Booth in May, but saw no deed, but that afterward in July, he saw a deed in the hands of the defendant. Now the deed was acknowledged before the notary public on the 29th of July, and Barney Fisher took it after it was acknowledged to be stamped. He says that he took it from Booth and returned to Booth, so that if Naluahi saw the deed in Kapilau's hand, it must have been in the very last days of July, and it is very evident that in September following, it was not in his hands.

Weighing the testimony, therefore, as carefully as possible, we must conclude that if the defendant ever had the deed in his possession, it was for a purpose of sheltering the property from Booth's creditors and was returned to Booth when that purpose had been served, and the deed was never delivered to defendant with the intention of passing the estate to him.

The decree of Mr. Justice Judd is therefore confirmed.

S. B. Dole for petitioners.

E. Preston for respondent.

Honolulu, May 17th, 1876.