H. G. MIDDLEDITCH, AS TRUSTEE IN BANKRUPTCY OF CHAS. F. HERRICK CARRIAGE COMPANY, LIMITED, *v.* JOHN W. CATHCART, MARY CATH-CART, WIFE OF SAID JOHN W. CATHCART, AND EDITH E. POND.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED APRIL 5, 1909.                    DECIDED APRIL 15, 1909.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

CREDITOR'S BILL—*contract for purchase of real estate in wife's name.*
     A contract for purchase of real estate in the name of the wife

obtained by her husband followed by his part payment on account of the contract is not per se in fraud of subsequent creditors.

OPINION OF THE COURT BY HARTWELL, C.J.

This is an appeal allowed from an order overruling the defendants' demurrer to an amended creditor's bill brought by plaintiff containing in substance the following averments: That on September 4, 1902, the defendant John W. Cathcart was indebted to the Herrick Carriage Company $202 evidenced by his promissory notes of that date, three of them for $50 each payable to the order of the said company in two, four and six months respectively and one note for $52 payable in eight months with interest at eight per cent. per annum; that May 20, 1903, the company was adjudged bankrupt and that on September 29, 1904, the plaintiff was appointed as its sole trustee in bankruptcy; that about December 20, 1905, the plaintiff recovered judgment against said Cathcart for $275.23 in the first circuit court of the Territory; that about July 14, 1908, no execution having been issued on the judgment, it was revived by scire facias by a judge of the first circuit court at chambers and an execution thereon issued July 14, 1908, for $337.65, the sum then due the plaintiff as trustee aforesaid, and was returned about August 6, 1908, nulla bona; that no part of the judgment has been paid and that there is now owing the plaintiff as trustee aforesaid on account thereof and for costs of the execution $337.65; that about the — day of August, 1902, as plaintiff is informed and believes and charges the fact to be, the defendant Mary Cathcart, then and now wife of said John W. Cathcart, entered into a certain contract with the defendant Edith E. Pond whereby she agreed to purchase, and the said Edith E. Pond to sell to her, for $1500 that certain lot of land with a dwelling-house thereon in Honolulu described in the bill as lot 4 in block 8 of the College Hills tract, being the premises occupied by the said John W. Cathcart as a family

residence by warranty deed but subject to a mortgage for $2000 held on said premises by Peter C. Jones, Ltd.; that this contract "was a plan conceived and devised by the said John W. Cathcart to hinder, delay and defraud his creditors of their just debts, and more particularly your Orator, as trustee aforesaid;" that while the contract was made in the name of Mary Cathcart the negotiations which led up to it were conducted by said John W. Cathcart, Mary Cathcart taking no part therein other than signing her name to the same; that the precise nature and terms of the contract are not known to the plaintiff, but upon information and belief he alleges that said Mary Cathcart has paid to said Edith E. Pond on account thereof the sum of $2055 and that her equity therein is coextensive with the payment so made by her in the proportion which such payments bear to the price for which said Edith E. Pond agreed in said contract to sell the same; that the said Mary Cathcart at the time said contract was made had no property or means whatsoever and was without expectation of acquiring any except as she might expect to acquire the same through the said John W. Cathcart and that she has not since come into possession of any property or means save by gifts from said John W. Cathcart; that all payments made to the said Edith E. Pond on account of said contract were made by said John W. Cathcart with his own money, he taking the receipt therefor in the name of said Mary Cathcart, as a part of a scheme and plan to hinder, delay and defraud his creditors and more particularly the plaintiff as trustee aforesaid; that by reason of said fraudulent practices she holds her equity in said contract with the said Edith E. Pond and in such lot of land as trustee in invitum for the creditors of the said John W. Cathcart and more particularly for the plaintiff as trustee aforesaid.

Interrogatories are filed with the bill, the relief sought being "that the said Mary Cathcart be decreed to hold her equity and right in and to said contract and the lot of land therein men-

tioned, as a trustee in invitum, for" the plaintiff and all other creditors of the said John W. Cathcart similarly situated who may join in this proceeding, contributing to the expense thereof; that said land be condemned and sold under directions of the court, the plaintiff agreeing to indemnify the said Edith E. Pond in the premises, and that out of the proceeds of the sale be paid such sum as may be found due her on the contract, and that the plaintiff and such other creditors as properly join in the proceeding be paid their respective claims, the overplus, if any, being paid to the said Mary Cathcart.

The demurrer was sustained "on the sole grounds that it does not appear from the amended bill of complaint, in what court the complainant recovered a judgment against the defendant John W. Cathcart, nor by what court, or judge, the said judgment was revived by scire facias," the court overruling every other ground of demurrer but allowing the plaintiff to amend, and upon the amendment being made the demurrer apparently was regarded as overruled.

The substance of the demurrer was laches in bringing the suit and that it does not appear that Mary Cathcart holds any property subject to execution on a judgment against her husband, the argument being that merely an option to purchase for $1500 is alleged, with no averment that it is still in force or that its performance could now be enforced. In their reply brief the defendants suggest that the contract of August 1902 could not have been intended to defraud the subsequent creditor of September 4, 1902. We have some hesitation in passing upon a point raised at this stage of the proceedings, but in view of the fact that the appeal is interlocutory and the point would be available on further proceedings we consider it advisable to rule upon it.

The claim of laches was not urged in argument and is not sustainable.

If a husband purchase a residence for his family and have the conveyance made to his wife the conveyance cannot be at-

tacked by subsequent creditors unless there are other circumstances showing an intended fraud, although intended for the very purpose of keeping the property secure from subsequent claims against himself. *Sexton v. Wheaton*, 8 Wheat. 229, 242; *Mottingly v. Nye*, 8 Wall, 370; *Graham v. Railroad Co.*, 102 U. S. 148; *Dowsett v. Kapilau*, 3 Haw. 709; *Cook v. Dayton*, 8 Haw. 8.

The difficulty is often extreme of showing that a voluntary conveyance is meant to hinder, delay or defraud future creditors, especially in view of the fact that the necessary result of the conveyance is to deprive creditors of the right to resort to the property for satisfaction of their claims. But there must be something in the circumstances or position of the person making the conveyance, besides the mere fact of making it, to justify an inference of intended fraud. *Freeman v. Pope*, L. R. 5 Ch. 538; *In re Maddever*, 27 Ch. D. 526. No such circumstances are averred in this case. The bill does not even aver that the payment with the husband's money on account of the contract was made after he had given the notes of September 4, 1902. If the defendants in their argument to the judge upon the demurrer had presented this objection the plaintiff might have amended, and in sustaining the demurrer we are not to be considered as passing upon the plaintiff's right to amend.

*Sweezy v. Jones*, 65 Ia. 272, and *Provident Life & Trust Co. v. Mills*, 91 Fed. 435, cited by the defendants, holding that an option to purchase is not an interest in land, are not cases of contracts for sale and purchase of real estate.

It was unnecessary to aver that the contract was still in force. In an action at law "in the case of reciprocal covenants constituting mutual conditions to be performed at the same time, the plaintiff must aver performance or a readiness to perform his part of the contract." 1 Chitty, Pleading, Sec. 330. But in view of the difficulty of ascertaining otherwise than by the dis-

covery sought by the bill whether the contract is in force or not, we think that the bill contains sufficient averments as to the contract to require answer and in default of answer to authorize a decree pro confesso.

Demurrer sustained, case remanded.

*A. S. Humphreys* for plaintiff.

*F. W. Milverton* for defendants.