D. E. METZGER, EXECUTOR UNDER THE WILL AND OF THE ESTATE OF J. W. RUSSELL, DECEASED, *v.* SOLOMON K. LALAKEA, AND A. M. CABRINHA, ADMINISTRATOR OF THE ESTATE OF HANNAH MAKAINAI, DECEASED.

No. 2084.

Argued March 28, 1933.      Decided April 26, 1933.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY BANKS, J.

This is a suit brought by D. E. Metzger, executor under the will and of the estate of J. W. Russell, deceased, against Solomon K. Lalakea, and A. M. Cabrinha, administrator of the estate of Hannah Makainai, deceased, to set aside a conveyance of land on the ground of fraud. The trial judge denied the relief prayed for and dismissed the bill. The petitioner appeals.

On February 12, 1929, Hannah Makainai conveyed to her brother, Solomon Lalakea, by quitclaim deed, all her right, title and interest in certain designated lands, the consideration expressed in the deed being the sum of one dollar and "love and affection." It is this deed that the petitioner seeks to have annulled. His claim is that his testator, James W. Russell, was either an existing creditor of the grantor, Hannah Makainai, at the time the deed was executed or that he subsequently became a creditor and that in either event the deed was fraudulent as to him and therefore should not be permitted to stand.

We think it important at the outset to determine Russell's status as a creditor at the time the instant suit was begun.

On April 17, 1929, Russell, who was then a practicing lawyer at Hilo, brought an action in assumpsit against Hannah Makainai, in which he recovered a judgment for the sum of $4007.29. On appeal to this court this judg-

ment was, on July 1, 1930, reversed, and a new trial was granted. Russell died on January 14, 1931, and D. E. Metzger was appointed executor of his will. Hannah Makainai died on October 24, 1930, and A. M. Cabrinha was appointed administrator of her estate. In the case of Russell against Makainai Metzger, as executor of Russell's will, was substituted as party plaintiff, and Cabrinha, as administrator of the estate of Hannah Makainai, was substituted as party defendant. The controversy was, by agreement, submitted to arbitration. The arbitrators, on August 27, 1931, awarded to the plaintiff the sum of $4007.29 together with interest and fees of the arbitrators. Upon this award judgment was, on August 31, 1931, duly confirmed by the circuit court of the fourth judicial circuit in the sum of $4818.29. Execution was issued on the judgment and returned no property found. The judgment has never been satisfied.

At the trial of the instant suit complainant, for the stated purpose of showing that Hannah's indebtedness to Russell was incurred prior to her deed to Solomon, offered in evidence the entire record, including the transcript of the testimony taken at the original trial of the case of Russell against Makainai, being Law No. 1628. At first the judge admitted the record as offered but later changed his mind and admitted only the judgment confirming the award of the arbitrators and excluded the remainder of the record. The entire record, however, including the transcript of the testimony, is here and it is contended by the complainant that the judge should have considered it in order to determine Russell's status as a preexisting creditor and that not having done so this court should now consider it. It is conceded that without this record there is no evidence that Russell was a preexisting creditor.

In considering the question of the admissibility of this

record it must be borne in mind that the action in which it was made was between Russell, the creditor, and Hannah Makainai, the debtor, and that Solomon Lalakea was not a party to that action nor was he in privity with either of the parties. It is contended by the petitioner, however, that it is shown by the evidence that Solomon employed and paid Hannah's counsel who conducted the case in her behalf and that he paid the entire expense of the trial. It is argued from this that Solomon had such a real connection with and interest in the litigation as to take the record out of the *res inter alios acta* rule and render it admissible against him in the instant suit. There is, however, nothing to indicate that Solomon employed Hannah's counsel or that he paid the expenses of the trial except the very transcript, the admissibility of which is questioned. If this transcript is not admissible against Solomon there is no evidence to support the petitioner's contention. Solomon, who was a witness in the instant suit, was cross-examined by the petitioner but was not interrogated on this subject. So that we are confronted with the inquiry whether a record, including the pleadings and the transcript of the testimony, is admissible in another suit brought by the plaintiff in the first suit against a third person who was neither a party to nor privy in the first suit.

The argument against the introduction of evidence of this nature is that it is *res inter alios acta* and therefore not to be considered against one who was not a party or privy and who had no opportunity or right to interpose objections or to cross-examine the witnesses or appeal from the judgment upon which the record was based. Many courts have taken this view of the law, not only in cases involving the rights of creditors but in other kinds of cases where it was sought to prove some material fact by the testimony of a witness which was given in another

trial to which the party against whom it was offered was a stranger.

In the case of *Lane* v. *Brainerd,* 30 Conn. 565, Lane had sued the New York & Boston Railroad Company and garnisheed Brainerd, who was a subscriber to stocks in the railroad company. Before the trial Brainerd died and his executors were made defendants. The executors offered the testimony of Brainerd in a former action by one Bishop, who had also sued the railroad company and garnisheed Brainerd upon the same subscription. Lane objected to this evidence. The trial court ruled it out and in sustaining the trial judge on this point the supreme court of Connecticut said (p. 579): "There was another point made, though not very much pressed, in reference to the rejection of the testimony of the original defendant, on another trial in a former suit between him and a Mr. Bishop. The defendant having died since the commencement of the suit, and the defense having devolved upon his executors, who have been made parties, they attempted to obtain the benefit of his testimony by showing what he testified on the former trial. As that was a trial between different parties, having different rights, and with whom the plaintiff had no privity, and as he had no opportunity to examine or cross-examine the witnesses, it would be contrary to the first principles of justice to bind or in any way affect his interests by the evidence given on that occasion, however identical the questions or some of them may have been with the questions which arise in this case."

In *Metropolitan St. Ry. Co.* v. *Gumby,* 99 Fed. 192, an infant, in an action against a railway company for personal injuries brought by its grandmother as next friend, had recovered judgment. Later the infant's mother brought an action against the same defendant to recover damages which she had sustained because of loss of serv-

ices of the infant. The accident in which the infant was injured was the same in both cases. The mother was allowed, against the objection of the defendant, to read to the jury the testimony of one Lyons who was a witness in the infant's action. Lyons had died before the mother brought her action. The court of appeals, in holding that the admission of this evidence was error, and, for that reason, reversing the judgment which the mother obtained, said (p. 198): "Manifestly, no such mutual or successive relationship exists between the infant, claiming damages for his pain and suffering, and his mother, claiming damages for the loss of his services." The opinion in this case contains a very comprehensive discussion of the subject. In *All* v. *All*, 250 Fed. 120, the court in discussing this subject said (p. 133): "The introduction in evidence of a judgment roll, as in the present case, as against a person not a party to the proceeding, is effective to establish the fact that such a judgment has been recovered. It is not effective to put in evidence the testimony in that cause. If it could be so effective the result would be that a third party, not a party to the cause, might have the issues against him tried upon testimony given by witnesses whom he had never seen or had the opportunity of cross-examining. The statement of the proposition in itself is its refutation." See also *Irving Air Chute Co.* v. *Russell Parachute Co.*, 41 F. (2d) 387, 391; *Rutherford* v. *Geddes*, 71 U. S. 220; *Fresh* v. *Gilson*, 41 U. S. (16 Pet.) 327.

In *Anderson* v. *Hultberg*, 247 Fed. 273, the essential facts are as follows: In 1903 one Hultberg was, under an arbitration agreement, awarded the sum of $264,708 against one Anderson. In 1904 this award was put in judgment by a circuit court in Illinois. In 1907 Hultberg sued Anderson in Kansas on this judgment and there obtained a judgment. Execution was issued on the Kansas judgment and returned *nulla bona*. Eight months later

Hultberg brought a creditors' bill, founded on the Kansas judgment, against Anderson's wife, to whom Anderson had in 1899 and 1901, long before the Kansas judgment was rendered, conveyed certain property. The purpose of this suit was to set aside these conveyances and subject the lands conveyed to the payment of the judgment which Hultberg held against Anderson on the ground that they were, for various reasons alleged in the bill of complaint, fraudulent as to Anderson's creditors. In discussing the admissibility of certain evidence which was allowed by the court below the court of appeals, in its opinion written by Judge Sanborn, said (pp. 276-279): "At the final hearing before the court below counsel invoked, and now in this court counsel for the plaintiff, Hultberg, invoke, the award, the decree of the Illinois court, the testimony of stenographers that certain witnesses testified to certain facts before the arbitrators, and the testimony of witnesses to statements of Anderson derogatory to the title of Mrs. Anderson to the land in controversy, which were made long after the deeds were delivered to Mrs. Anderson and recorded, as evidence against her that Anderson held claim No. 9 above and its proceeds in trust for the Covenant at the time her deeds were made, that he was then indebted to the Covenant, that he paid for the land with moneys he held in trust for the Covenant, that the land was bought and conveyed to her by Anderson with intent to hinder, delay, and defraud his creditors, and that she has always held the land in trust for Anderson, and it has always been really his. The court below seems to have held that such evidence was competent to prove that Anderson held claim No. 9 and its proceeds in trust for the Covenant. But it was indispensable to the maintenance of the plaintiff's suit that he should clearly prove that at the times the deeds to Mrs. Anderson were made in December, 1899, and April, 1901, not on January 31, 1907, when the Kansas

judgment on which his suit is founded was rendered, Anderson held the title and the proceeds of claim No. 9 in trust for the Covenant, or that at those times he was indebted to the Covenant, and his payment for the lands deeded to Mrs. Anderson deprived him of the means to pay his just debts then existing, or that he bought the lands and caused them to be conveyed to his wife with the actual intent to hinder, delay, or defraud his creditors, or that she has always held them in trust for him and they have been really his. It is indispensable to the maintenance of a suit on a creditors' bill to avoid conveyances made or caused by the debtor before the judgment on which the creditors' suit is founded was rendered against the grantor as in fraud of the latter's creditors that the plaintiff prove the existence, at the times the conveyances were respectively made, of the trust, the indebtedness, or the actual fraudulent intent of the judgment debtor on which the plaintiff relies. * * * The subsequent judgment against the debtor in an action to which the prior grantee was not a party or privy estops the grantee from denying that the judgment was rendered at the time specified in its record and that the grantor was at that time indebted to the judgment creditor in the amount therein stated, but it estops him no farther. Because such a prior grantee is not a party or privy to the subsequent judgment against his grantor in an action commenced after the grants were made, as in this case, and because 'no grantee can be bound by any judgment in an action commenced against his grantor subsequent to the grant, otherwise a man having no interest in property could defeat the estate of the true owner' (Dull v. Blackman, 169 U. S. 243, 248, 18 Sup. Ct. 333, 42 L. Ed. 733; Freeman on Judgments [1st Ed.] § 162), neither the judgment nor the record of the action or proceedings on which the judgment is based is either proof or competent evidence

against the grantee of the existence of a trust, of an indebtedness of the grantor or of his intent to defraud his creditors at the time the prior conveyance was made, nor of the circumstances or character of the transaction out of which the adjudged indebtedness arose, nor of any of the facts at issue between the grantor and his judgment debtor, nor of any adjudication or fact disclosed in the proceedings for that judgment, except the fact of the rendition of the judgment and of the indebtedness of the grantor to the judgment creditor at the time of the rendition of the judgment to the amount therein stated. * * * For the same and still stronger reasons neither the award of the arbitrators, nor the judgment against Anderson thereon in the Illinois court, nor any decision which that court or the arbitrators made, nor the records of those proceedings, nor the testimony of witnesses in the hearing before the arbitrators, nor the admissions or statements of Anderson after the deeds were made, were competent evidence against Mrs. Anderson, except in those instances in which she and her attorneys in this case stipulated that they should be considered in evidence or themselves offered them in evidence. All those proceedings were commenced years after Mrs. Anderson received her deeds and recorded them. She was not a party or a privy to any of them. They were all founded on the agreement of arbitration which Hultberg and Anderson signed. Mrs. Anderson never signed it or took any part in the proceedings under it and none of those proceedings to whose introduction in evidence in this case she did not consent are more competent evidence against her upon any issue in this case than they would be against any other stranger. They were *res inter alios acta,* and had no effect upon her rights. The testimony of stenographers or other witnesses to what Anderson or any other witnesses testified before the arbitrators was

incompetent, because she had never agreed to the arbitration, or to the taking of any testimony before the arbitrators, the court, or the examiners appointed in the arbitration proceeding. Because she had no opportunity to cross-examine the witnesses, or to produce evidence to rebut their testimony, the testimony of witnesses at a former trial of the same cause between the same parties is inadmissible upon a second trial between them in the federal courts. * * * Much more is the testimony of witnesses at a former trial of the same issues in a suit or proceeding to which the objector was neither a party nor a privy. Nor is the testimony that crept into this case of the statements or admissions of the grantor, Anderson, derogatory to the title of Mrs. Anderson, which were made many months after her deeds were delivered and recorded, competent evidence to impeach her title. Declarations or admissions of a party who has never had, or has had and has conveyed, or has caused the title to property to be conveyed, made subsequent to the conveyance, and which were not a part of the things done at the time of the transaction, are inadmissible to assail the title of the grantee."

There are many other judicial expressions of similar import. It is contended by the plaintiff, however, that in *Hinde's Lessee* v. *Longworth,* 24 U. S. (11 Wheat.) 199, the Supreme Court of the United States has laid down a different rule and that this court should not go against it. The *Hinde* case involved an attack by a judgment creditor upon a conveyance of lands made by his debtor anterior to the judgment. The court held that accounts upon which the judgment was based and which had been spread upon the record were admissible against the grantee of the deed for the purpose of showing that the indebtedness upon which the judgment was rendered antedated the conveyance although the grantee was not a party to the

716

suit between the creditor and the debtor. Speaking on this subject the court said (pp. 209-211): "The second bill of exceptions necessarily presupposes that the deed was in evidence before the jury. For it states, that the defendant, in order to prove that the deed was made with intent to defraud creditors, and therefore, void, having read some depositions to prove that fact, offered in evidence the records of two judgments recovered against Doyle, the elder; one in favor of John Graff, on the first Tuesday in August 1799, for upwards of $900, and the other in favor of Edward Shoemaker, in October term 1800, for about $500. To the admission of which the plaintiff's counsel objected as incompetent evidence, on the ground that these were proceedings *inter alios,* to which Doyle, the younger, was in nowise a party. The objection was overruled, and the evidence admitted. It will be perceived that the objection to the evidence was specifically placed on the ground, that Doyle, the younger, was not a party to the judgments. And it may well be questioned, whether, when the purpose for which the evidence is offered is specifically avowed, the court will look at it in any other point of view, or inquire whether it might not be proper for some other purpose. As a general rule, we think, the party ought to be confined, in examining the admissibility of evidence, to the specific objection taken to it. The attention of the court is called to the testimony in that point of view only; and to admit an inquiry afterwards, whether the evidence might not have been admissible for some other purpose, would be sanctioning a course of practice calculated to mislead. It is unnecessary, however, in this case, to put the question on that ground, for the evidence was admissible in whatever light the objection is taken. The consideration expressed in the deed from Doyle, the elder, to his son, is natural love and affection, and the judgments were introduced to

show that the grantor was in debt, at the time of giving the deed, which, as was contended, would render it void as against creditors. This was, therefore, necessarily an inquiry into matters to which the grantee in the deed was not a party. It was certainly competent for the defendant to show that the grantor was indebted, at the time he made the conveyance; this was a necessary step towards establishing the fraud; and if these judgments conduced to prove that fact, they could not be shut out as incompetent evidence. The extent and effect of the evidence was matter for the jury. If the evidence ought to have been excluded, because Doyle, the younger, was not a party to the judgments, the same objection would have lain against the proof of his being in debt to others in any manner whatever; that would have been equally an inquiry into matters to which the grantee in the deed was not a party. There was, therefore, no objection to the evidence on this ground. The judgments appear to have been entered some short time after the date of the deed, and it is said, that a voluntary deed is void only as to antecedent, and not subsequent creditors, unless made with a fraudulent intent; and this appears to be the doctrine of this court, as laid down in *Sexton* v. *Wheaton,* 8 Wheat. 242, after a review of the leading authorities on this question. But *copies of the accounts"* (italics ours) "upon which the judgments were founded, are spread upon the record, by which it appears, that the cause of action arose before the date of the deed. If these accounts did not properly form a part of the record, according to the course and practice of the court where the judgments were entered, a specific objection should have been made to their being received in evidence, which would have led to the inquiry, whether they properly formed a part of the record; but as the question is now presented to this court, we cannot say, that these accounts are to be stricken out

of the record. They may be looked to, for the purpose of showing that Doyle, the elder, was in debt at the date of the deed; but whether to an extent which would avoid the deed, must depend on circumstances which are not to be inquired into by this court. There was no error, therefore, in the admission of this evidence."

It is evident that what the court held to be admissible *as proof of the indebtedness prior to the deed* were the *accounts* which were spread upon the record and upon which the judgments were founded. This is very different from admitting, for this purpose, the transcript of testimony of witnesses given at the trial of the case in which the judgment was obtained.

In *Lyon* v. *Rhode Island Co.*, 94 Atl. (R. I.) 893, L. R. A. 1916A 983, cited by complainant, the question before the court was whether the transcript of the testimony of a witness, given in the trial of a personal injury case in which the father appeared as the next friend of his minor daughter, was admissible against him in a subsequent suit brought in his own behalf against the same defendant. The court held that while there was a technical difference between the plaintiffs in the two actions they were substantially the same and that since the father had by his counsel cross-examined the witness in the trial of his daughter's case there was no injustice in admitting the testimony offered, the witness being then dead.

*Watson* v. *St. Paul City Ry. Co.*, 79 N. W. 308, is an action brought under the death statute of Minnesota by the plaintiff as administrator of his deceased wife, naming as next of kin their daughter. In this action the defendant company offered the deposition of a doctor taken by the plaintiff in a former suit involving the same parties but naming as next of kin the plaintiff. The court held that the plaintiff in both cases being the same person, and having cross-examined the doctor when his deposition was

taken, and the defendant being the same, there was sufficient identity of parties to render the deposition admissible.

These cases are entirely inapplicable to the instant case. Solomon Lalakea had no connection, either technical or real, with the case in which the testimony the complainant wishes us to consider was given and had no opportunity to cross-examine the witnesses in that case. A transcript of this testimony therefore is, by the great weight of judicial opinion, inadmissible against him for the purpose of proving that Russell was a creditor of Hannah Makainai's prior to the execution of the deed in question.

This conclusion is strengthened by section 2588, R. L. 1925, which seems to indicate a legislative policy that even depositions and other testimony taken and filed in court in one suit are not admissible in another suit unless the cause and the parties are the same. The statute is as follows: "When the plaintiff in any suit shall discontinue it, or become nonsuited, and another suit shall afterwards be commenced for the same cause between the same parties or their representatives, all depositions and testimony lawfully taken and filed in court in any preceding suit may be used in the succeeding suit, in like manner as if taken in such suit." If depositions which are read over and signed and verified by the deponents and certified to by the commissioner taking them are not admissible under the statute unless the subsequent suit in which they are offered is between the same parties or their representatives, there is even greater reason for rejecting the mere transcript of testimony offered in the instant case. (See also § 2593, R. L. 1925.)

Since there is no evidence that Russell was a creditor of Hannah's prior to the date of her deed to Solomon we must consider his rights as a subsequent creditor.

It is a firmly established principle that even a volun-

tary conveyance of land cannot be successfully attacked by creditors of the grantor who became such subsequent to the conveyance "unless it was made with the intent to defraud such sebsequent creditors; or there was secrecy in the transaction by which knowledge of it was withheld from such creditors, who dealt with the grantor upon the faith of his owning the property transferred; or the transfer was made with a view of entering into some new and hazardous business, the risk of which the grantor intended should be cast upon the parties having dealings with him in the new business." *Schreyer* v. *Scott*, 134 U. S. 405, 411.

As we have already seen, the deed in question was executed on February 12, 1929, and was duly recorded on February 15 of the same year. This recordation was of course notice to the world that Hannah Makainai had completely divested herself of all interest in the property. There was therefore no secrecy in the transaction from which a subsequent creditor could infer that Hannah was still its owner and that credit could safely be extended to her on the faith of such ownership. There is nothing in the evidence before us that Hannah, subsequent to the deed, entered upon any kind of business or even contemplated doing so when she executed the deed. There was no information withheld from subsequent creditors relating to the transaction which, if they had possessed it, would have led them to believe that Hannah had reserved to herself some interest they could subject to the payment of debts which they permitted her to contract. It is true, as the evidence shows, that as part of the consideration for the conveyance Solomon agreed to support Hannah during her life. It is contended by the petitioner that this agreement was the reservation by Hannah of a secret trust which rendered the deed void as to subsequent as well as antecedent creditors.

We think this conclusion of law does not follow. There

was no agreement that if Solomon failed to maintain and support Hannah the interest in the land which she conveyed should revert to her. Nor was there any agreement that Solomon should hold this interest in trust during Hannah's life for her benefit. Also, there was no agreement that the title conveyed to Solomon was dependent on his performance of his agreement. Nor was there a reservation by Hannah of any interest in the land as security for the performance by Solomon of his agreement. If he had failed to carry out his agreement Hannah's remedy would have been an action for damages or some other appropriate action but she could not have compelled a reconveyance of the title.

There is much controversy between the parties as to whether the conveyance to Solomon was in fact supported by a consideration which the law recognizes as valid and sufficient. This controversy was predicated upon the assumption that we might hold that the record offered in evidence to prove that Russell was a creditor prior to the deed to Solomon should be considered for that purpose. Since we have reached a contrary conclusion the question of the validity or sufficiency of the consideration need not be decided. Russell being a subsequent creditor his executor cannot for the reasons given have the deed in question canceled although it was merely voluntary.

The decree appealed from is affirmed.

*H. Irwin* (also on the briefs) for petitioner.

*W. Z. Fairbanks* (*R. J. O'Brien* on the brief) for respondent S. K. Lalakea.