QUETERIO S. ACHILES *v.* FRANCISCO BAUTISTA CAJIGAL, HELEN LEE CAJIGAL, AND GORGONIO CAJIGAL.

NO. 2806.

ARGUED APRIL 23, 1952.          DECIDED JULY 25, 1952.

LE BARON AND STAINBACK, JJ., AND CIRCUIT JUDGE BROWN IN PLACE OF TOWSE, C. J., DISQUALIFIED.

OPINION OF THE COURT BY STAINBACK, J.

This is a creditor's bill to set aside a judgment debtor's

fraudulent conveyances and to reach equitable assets which he had placed beyond the scope of legal execution in the names of his wife and of another member of his family, all of whom are named as respondents herein.

On or about October 15, 1945, the petitioner and respondent, Francisco Bautista Cajigal, entered into an agreement whereby that respondent purportedly sold to petitioner for a payment of $8,190 three taxicabs but never owned or had any interest in them. Nor were the taxicabs ever delivered or the money returned.

On May 27, 1948, petitioner filed an action in assumpsit in the circuit court of the first judicial circuit against respondent Francisco Cajigal in which petitioner alleged and proved that the respondent Cajigal on October 15, 1945, had defrauded him of the sum of $8,190 and on February 9, 1949, judgment in the above assumpsit action was rendered and entered in favor of the petitioner and against the respondent Cajigal in the sum of $10,114.01. Writ of execution on this judgment was returned nulla bona.

The petitioner seeks to reach and apply to his judgment certain assets, namely, all of the right, title and interest of both Fransisco and his wife, Helen Cajigal, in a certain house and lot located on Liliha street in Honolulu, which was purchased under an agreement of sale, naming Francisco and Helen as vendees, in May, 1946, a deed therefor being delivered on June 30, 1947, and recorded January 8, 1948. It also seeks to obtain execution upon a 1947 Cadillac automobile registered in Helen's name, household furniture purchased by Francisco and Helen and used by them in their own home but legal title to which was in the name of respondent Gorgonio Cajigal, a cousin of Francisco.

In the meantime and subsequent to this fleecing of petitioner, Francisco on June 25, 1946, fleeced one Paul Rivera of $24,000, for which Rivera brought an action in assumpsit

on July 3, 1946, securing a judgment against Francisco for $24,000 on December 12, 1947.

On November 4, 1947, after Rivera's suit and shortly prior to Rivera's judgment, Francisco transferred his one-half interest in the premises on Liliha street to his wife, Helen, for a purported consideration of $10, which deed was not recorded until January 8, 1948, and after return of execution had been entered against Francisco and an order for examination of judgment debtor had been made on January 6, 1948. According to respondent's testimony, the premises conveyed to Helen comprised all the property owned by him at that time and rendered him insolvent.

Rivera instituted a creditor's bill on January 17, 1948, against Francisco and thereafter Rivera's claim was satisfied by Francisco and a discontinuance and satisfaction of judgment were entered on April 6, 1948.

It was after this proceeding of Rivera against Francisco that the petitioner filed his action and obtained judgment. From this time table it appears that the petitioner herein was fleeced by Francisco some seven months prior to the purchase of the real property sought to be applied; it also appears that during the pendency of the litigation of the case of Rivera against respondent, respondent transferred his property to his wife and caused a Cadillac automobile to be purchased in her name and certain furniture in the name of Gorgonio Cajigal.

We need not review the testimony in detail. Respondent's own testimony shows that practically all of the funds expended for the purchase of the real property and for improvements thereon, for the Cadillac car and the furniture were furnished by respondent Francisco in the first instance, irrespective of in whose name the title thereto was finally vested and irrespective as to whose bank account the sums had been first deposited; that practically the only income of the family was from the "earnings" (largely from

gambling and fleecing operations) of Francisco himself, Helen being a housewife who had not been gainfully employed since 1929 except occasionally in doing needle work and taking care of her sister's children; that whatever earnings were placed in Helen's bank account or invested in bonds in the joint names of parent and children were expended by Francisco for his own purposes without any restraint.

The case was tried on September 2, 1949. The evidence consisted mostly of the testimony of respondents themselves, who were called as adverse witnesses, and of documentary evidence.

The court found that " 'In accordance with the generally established principle that he who alleges fraud must prove it, * * * the burden of proof rests upon the complainant, the presumption being against rather than in favor of the existence of fraud.'

"The theory and background of that rule is predicated, to a great degree, in the Court's understanding, upon the history of criminal law, and the analogy drawn in fraud cases to criminal law, as such." It decided that the petitioner had not substantiated by evidence the allegations of his complaint, that the facts he had established were merely "patches of fraud."

The Statutes of 13 and 27 Elizabeth that conveyances made with intent to hinder, delay and defraud creditors are void unless the transfer is made on good consideration and bona fide to a person having no notice of such fraud is law in the Territory. Such conveyance is void at law as well as in equity. (*Dee* v. *Foster,* 21 Haw. 1.)

It is seldom that the fraudulent intent of the transferor and knowledge of the transferee can be proved by direct evidence. Nor does the law require it to be so proved. "If the conveyance is made under such circumstances that the result must necessarily be to hinder and delay creditors,

it will be presumed that this was the intent of the transferrer in making it." (24 Am. Jur., Fraudulent Conveyances, § 12, p. 170.)

This difficulty was recognized in *Twynes' Case*, 3 Coke 80b, 76 Eng. Rep. 809, over three hundred fifty years ago. This case was reported by Lord Coke who provided certain objective standards for determining which fraudulent conveyances were declared void by the Statute of Elizabeth. The following indicia or "badges of fraud" evolved from *Twynes' Case* have been recognized by a long series of cases:

1. The transferor is indebted or insolvent;

2. The conveyance is general, *i. e.*, that the debtor's entire estate is diminished, thereby leaving him insolvent;

3. Consideration for the conveyance is absent;

4. The conveyance is secret and concealed;

5. The conveyance is made to a family member or to one of close relationship;

6. The conveyance is made while a suit against the debtor is pending or threatening;

7. The transferee takes the property in trust for the debtor;

8. The debtor remains in possesion, reserves the use and benefit, and deals with the property as his own.

None of these alone proves fraud but warrants an inference of fraud, particularly where there is a concurrence of many of these badges. Naturally, where a transfer is surrounded by many or all of such circumstances and indicia, the result must necessarily be to hinder and defraud creditors and all evidences of such badges should be admissible to prove or give rise to the presumption that the debtor's intent was fraudulent. Wide scope for the proof of such fraud must be allowed.

In this connection the trial judge refused to permit evidence or take judicial notice of the proceeding by Rivera prior to the transfer of the property to Francisco's

wife, apparently on the basis that at the time of the transfer the petitioner himself had not brought any proceeding. However, the rule is in determining whether a transfer is voluntary that "It is not necessary that the transferrer's intention to defraud shall have been directed against any particular person." (24 Am. Jur., Fraudulent Conveyances, § 143, p. 284, citing numerous authorities.) Furthermore, respondent became a debtor of the petitioner when the fraudulent transaction took place on October 15, 1945, and not as of the date of the judgment of petitioner against respondent. Thus, at the time of the transfer to the wife on November 4, 1947, petitioner occupied the status of a prior existing and unpaid creditor. (*Opfergelt* v. *Stevens,* 10 Haw. 256.)

Proof of pending or anticipated litigation at the time of the transfer is one of the most commonly recognized indicia which would bear upon issue of the debtor's intent to defeat the claim of creditors. (*Callan et al.* v. *Statham et al.,* 23 Howard 477.)

In case of a fraudulent conveyance, if the debtor is insolvent when he makes the gift or the effect of such is to leave him insolvent, there is a fraudulent conveyance as a matter of law. "His [the debtor's] intent, * * * is to hinder, delay and defraud his creditors, because of the principle that one is taken to have contemplated the necessary consequences of his own acts." (Glenn, *Fraudulent Conveyances and Preferences,* rev. ed., vol. 1, § 270, p. 460.) See also *Briggs* v. *Sanford,* 219 Mass. 572.

The evidence is undisputed that in the present case the transfer left the debtor insolvent and that there was no consideration other than the $10, a wholly inadequate consideration.

It is obvious that Helen Cajigal at the time of the transfer to her knew that her husband was being sued by Rivera and she herself was later made a defendant in Rivera's

creditor's bill. However, inasmuch as the conveyance was without adequate consideration, she was not a bona fide purchaser for value, paying good consideration and taking in good faith without knowledge of the debtor's fraud. "The only assignments of property by an insolvent which the law will sustain are those upon good consideration to a *bona fide* purchaser, having no reasonable cause to believe the party insolvent." (*See Hop Company* vs. *Soper,* 7 Haw. 4.) Both bona fides and adequate consideration must be shown to sustain such conveyance.

Again, the fact that the conveyance in question was made between husband and wife subjects it to keen scrutiny and only slight evidence in addition to this relationship is required for a prima facie case of fraudulent conveyance. There are numerous decisions both in Hawaii and elsewhere that transfers between parties of close blood or marital relationship will be carefully scrutinized by the court. (*Mc-Cully* vs. *Huddy,* 6 Haw. 108; *Collection Corp.* v. *Anami,* 34 Haw. 202; *Parke* vs. *Lau Ng,* 5 Haw. 515; *Green* vs. *Asiona,* 6 Haw. 233.)

Under all the circumstances of this case the purchase of the automobile in the name of his wife and subsequent payments thereon by the husband were fraudulent acts, rendering the wife a trustee of the property and it an equitable asset subject to the creditor's bill. In correlation as another "badge of fraud," the debtor remained in possession of the property, reserved its use and benefit, and dealt with the property as his own. The testimony shows the facts as to residence, repair, etc., by the husband and, in addition, evidence was offered to show that the husband and wife attempted to borrow money on the property, which offer of proof was refused by the chancellor. Such evidence should have been permitted to show that Francisco was still exercising dominion over the property and dealing with it as his own. Further, the conveyance

was secret and concealed inasmuch as the conveyance was not recorded until after the commencement of the creditor's suit by Rivera against Francisco.

Counsel for appellees advances the claim for the first time in the appellate court that appellees had a homestead exemption in this property. It is too late to advance this claim in this court and moreover such exemption does not apply to property under joint ownership. (*Thurston* v. *Maddocks*, 6 Allen 427 [Mass.]; *The J. I. Case Company* v. *Joyce*, 89 Tenn. 337.)

As we have noted, all eight badges of fraud heretofore referred to are present in this transfer of property; the case fairly reeks with fraud.

Reversed.

*N. K. Chung* (*S. Kashiwa* with him on the briefs) for appellant.

*O. P. Soares* (also on the brief) for appellees.