**John L. SHERRY, et al., Plaintiffs,**

v.

**Michael Marshall ROSS,
et al., Defendants.**

**Civ. No. 91–00671 FIY.**

United States District Court,
D. Hawaii.

March 18, 1994.

Robert J. Faris, Gelber Gelber Ingersoll & Klevansky, Honolulu, HI, for plaintiff Sherry, et al.

Larry T. Topliss, Honolulu, HI, for defendant Ross, et al.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

YAMASHITA, United States Magistrate Judge.

### INTRODUCTION

This is an action to set aside as fraudulent conveyances, a series of transfers beginning September 3, 1971, of an 11,334 square foot fee simple parcel of land in Makiki, Honolulu, Hawaii and the lessor's interest in a thirty-two unit leasehold condominium building, known as the Kealoha Arms, on that land. On November 11, 1991, John Sherry and 52 other individuals (together "Plaintiffs"), who hold a fraud judgment against Michael Ross (and others) in the amount of $1,266,912.00, plus costs, filed a complaint in this court. The Defendants are Michael Ross, Annette Ross (Michael's former wife), and Dean Ross (Annette Ross' son, now deceased). This case is before this Court under diversity jurisdiction.

Parties proceeded to a bench trial before the Honorable Francis I. Yamashita, United States Magistrate Judge, on November 16, 1993. The Court heard the testimony of Norman Schneider and Defendant Annette Ross. By stipulation, the depositions of Michael Ross, Annette Ross, Dean Ross, Norman Schneider and Larry Topliss and a large number of documents were admitted into evidence.

As issues of first impression, this Court must determine how, under the common law of Hawaii prior to the enactment of Hawaii's version of the Uniform Fraudulent Transfer Act, a subsequent creditor may challenge a fraudulent conveyance from a third party to the debtor's spouse. Specifically, this Court looks at whether actual intent is necessary to prove fraud or whether the presence of "badges of fraud" are sufficient. Also, if fraud is found, the Court must determine, to the extent that value is given by a debtor's spouse, what interest the debtor's spouse has in the property.

### FACTS

#### The Parties, Jurisdiction and Venue

Each of the 53 Plaintiffs in this action are permanent residents of the states other than Hawaii. Defendants Michael M. Ross and Annette K. Ross are permanent residents of the State of Hawaii, and Defendant Dean Ross was, until his death on May 2, 1993, a permanent resident of the State of Hawaii.

Michael Ross and Annette Ross were married on August 31, 1968 and divorced on March 16, 1989. (Exhibits "21" and "22"). Dean Ross is the son of Annette Ross (but is not the biological or adopted son of Michael Ross).

This Court has jurisdiction over this action under 28 U.S.C. § 1332, inasmuch as the amount in controversy exceeds $50,000.00 and there exists complete diversity of citizenship between all Plaintiffs and all Defendants. Plaintiffs are residents of states other than Hawaii and Defendants are residents of the State of Hawaii. Venue is appropriate in this district because all Defendants are permanent residents of the State of Hawaii.

*The Underlying Judgment Against Michael Ross*

In 1986, Plaintiffs commenced an action entitled *Sherry v. Guinto,* No. 86 C 305, in the United States District Court for the Northern District of Illinois, East Division, against a group of defendants, including Defendant Michael Ross. Plaintiffs' first amended complaint (Exhibit "1") alleged that Plaintiffs had invested in certain limited partnerships sponsored by some of the defendants, and that all of the defendants, including Michael Ross, had engaged in a scheme to defraud Plaintiffs by (among other actions) misappropriating funds from the limited partnerships for their own personal benefit.

Michael Ross failed to answer the complaint in *Sherry v. Guinto,* and a judgment was entered on March 16, 1989 against Michael Ross (and others), jointly and severally, in the sum of $1,266,912.00 (Exhibit "2"). The judgment remains in full force and effect and has not been paid.

*The Kealoha Arms*

In late 1968, Norman J. Schneider learned about a parcel of property at 1658 Liholiho Street, Honolulu, Hawaii, which had appropriate zoning for development as a condominium project. Although Mr. Schneider had not previously met Michael Ross, he knew that Michael Ross was a real estate developer, and therefore approached Michael Ross about the potential development of the Liholiho Street property. Michael Ross expressed an interest in developing the property. (Exhibit "150" at 7–10).

Michael Ross and Mr. Schneider entered into an "Initial Payment Receipt and Contract" dated August 23, 1968, which provided for the purchase of the property from Hiro-shi Yamamoto and Terue Yamamoto. (Exhibit "30" at 4).

By instrument dated August 22, 1969, Mr. Schneider acquired fee simple title to the Liholiho Street property from Mr. and Mrs. Yamamoto. (Exhibit "4"). Mr. Schneider paid the full purchase price of approximately $100,000.00 to acquire the property from Mr. and Mrs. Yamamoto. (Exhibit "150" at 13–15). Michael Ross paid nothing.

Mr. Schneider, as "Fee Simple Owner," and Michael Ross, as "Developer," executed and recorded the Kealoha Arms declaration of Horizontal Property Regime on September 11, 1969, and recorded it in the Bureau of Conveyances of the State of Hawaii on September 15, 1969. (Exhibit "28"). The amendment to the declaration also refers to Michael Ross as the "developer" of the project. (Exhibit "29").

Defendant Annette Ross played a limited role in connection with the development of the Kealoha Arms. Because Michael Ross was (and is) a quadriplegic suffering from multiple sclerosis, he needed physical assistance in many aspects of daily life, and Annette Ross, who was then his wife, provided that assistance. For example, when Michael Ross met monthly with Mr. Schneider to report on the project's progress, Annette Ross was present at the meetings. Also, because she had been an interior decorator before her marriage to Michael Ross, Annette Ross helped decorate the model unit and the common areas in the Kealoha Arms. Annette Ross further claims that she paid for the decorating of the model unit. Despite her assistance, the Court does not find that Annette Ross' involvement rose to the level of a "co-developer" of the project.

Michael Ross received compensation for his role as developer of the Kealoha Arms through the sale of the 32 leasehold condominiums in the project. Therefore, when the Kealoha Arms was completed, neither Michael Ross nor Annette Ross had any interest in the property by reason of their development efforts.

*Transfers of the Kealoha Arms*

Upon completion of the project, and the sale of all condominium units, by Deed dated

September 3, 1971, Norman Schneider conveyed to Annette Ross, as tenant in severalty, "all of the apartments and common interests appurtenant thereto comprising the Kealoha Arms Horizontal Property Regime, subject to the various apartment leases affecting individual apartments in the project." (Exhibit "5"). By Assignment dated October 10, 1973, Norman Schneider assigned to Annette Ross, as tenant in severalty, the lessor's interest under the various apartment leases in the Kealoha Arms. (Exhibit "6"). The effect of the two instruments, taken together, was to place legal title to the "leased fee" interest in the property underneath the Kealoha Arms in Defendant Annette K. Ross. Mr. Schneider testified that at no time was he forced to sell his interest to Annette Ross.[1]

The conveyance tax stamps on the deed and the assignment show that a total of $90.75 of conveyance tax was paid. (Exhibits "5" and "6"). Because the conveyance tax is assessed at the rate of five cents per hundred dollars of consideration paid, Haw.Rev.Stat. § 247-2, it appears that Mr. Schneider received approximately $120,000.00 in consideration for conveyance of his interest in the Kealoha Arms. Mr. Schneider received payment in the form of several checks.

Annette Ross testified that she paid Mr. Schneider for the property with her own funds. She claims that she had the funds from several sources. Annette Ross had sold a business called the "House of Boutique," had been a charm and modelling instructor, and had sold a residence and a duplex in California.

From the evidence presented at the trial, the Court has some doubt whether any of the funds for the purchase of the Kealoha Arms came from the sale of the "House of Boutique." Annette Ross claims that she received $5,000.00 and a trip to Europe from the liquidation of the "House of Boutique."

The evidence shows that Paul Story sold a business in 1965, called the "House of Boutique" while he was married to Annette Ross. Exhibit "26". However, when Annette Ross and Paul Story divorced in 1966, although several outstanding debts were listed, no profits from the sale of the "House of Boutique" were listed as assets in their divorce agreement. Exhibit "27".

In any case, no evidence was presented by Plaintiffs to contradict Annette Ross' testimony that she had funds from her earnings as a charm and modelling instructor and from the sale of California real estate. Annette Ross purchased a residence in 1945 which she sold twelve to fourteen years later. She also purchased and sold a duplex. Annette Ross testified that all profits were put in the bank and into certificates of deposit.

No evidence was presented that Michael Ross provided any of the funds paid to acquire the Kealoha Arms.

In 1971, at the time Annette Ross acquired the property from Mr. Schneider, Michael Ross was not insolvent or close to insolvency. To the contrary, Michael Ross was enjoying a degree of financial success during this time. In 1971, Michael Ross was a real estate developer and there is insufficient evidence for the Court to find that Michael Ross' numerous real estate transactions had placed him in financial trouble in 1971.

Further, in 1971, Michael Ross was not a judgment debtor or in financial trouble because of law suits against him. Although three complaints had been filed against Michael Ross beginning June 30, 1971 through August 1973, it was not until August 13, 1973 that a complaint for money damages in the amount of $15,457.37 was filed against Michael Ross. Exhibit "41".[2] It was not until

---

1. The Court notes that as a third party who has no interest in the outcome of these proceedings, the Court found Mr. Schneider's testimony to be the most credible and therefore, puts the most weight on his testimony.

2. On June 30, 1971, a complaint was filed against Michael Ross. Exhibit "38". At issue

was a mechanic's and materialman's lien. A second complaint was filed on October 24, 1972. At issue was Michael and Annette Ross' interest as holders of a second mortgage on the property being foreclosed. Exhibit "39". A third complaint was filed March 21, 1973. At issue was an attempt to make Michael Ross to convey property. Exhibit "40".

1977 that Michael Ross incurred an adverse judgment.[3]

Although title to the Kealoha Arms was in Annette Ross' name, Michael Ross continued to maintain some measure of control over the property. In an affidavit in the First Circuit Court of the State of Hawaii dated June 9, 1983, Michael Ross stated that he owned the Kealoha Arms. Exhibit "34". In August of 1973, Michael Ross, together with Annette Ross, T. Lawrence Jett and Robert Read borrowed $950,000.00 from Amfac Financial Corporation, secured by the property. Exhibit "17".

By Deed dated June 16, 1977, Annette Ross conveyed the Kealoha Arms to her son, the late Defendant Dean Ross. (Exhibit "7").

By Deed dated March 20, 1978, Dean Ross conveyed the Kealoha Arms back to Annette Ross. (Exhibit "8").

By Deed dated March 9, 1984, Annette Ross transferred the Kealoha Arms to Dean Ross once again. (Exhibit "9"). Annette Ross transferred the Kealoha Arms to Dean Ross as part of a three-way transaction with Dean Ross and Mr. and Mrs. Carstensen. (Exhibits "148" at 24–25, "154", "155", "156", "157").

By Quitclaim Deed dated April 26, 1985 (Exhibit "10"), Dean Ross conveyed the Kealoha Arms to William Patrick O'Connor, as Trustee of the "Ross Trust" dated November 1, 1984. Under the terms of the Ross Trust instrument (Exhibit "19"), Annette Ross and Dean Ross were the initial beneficiaries of the trust. Under Dean Ross' will (Exhibit "161"), Annette Ross is the devisee of Dean Ross' entire estate, which includes his beneficial interest in the Ross Trust. Therefore, now that Dean Ross has passed away, his mother, Annette Ross, has become the sole living beneficiary of the trust.

## DISCUSSION

### The Common Law of Fraudulent Conveyances

In the Order Denying Defendants' Motion for Summary Judgment dated March 12, 1993, the Honorable Harold M. Fong, United States District Judge found that Hawaii's version of the Uniform Fraudulent Transfer Act, HRS Chapter 651C, which became effective on June 4, 1985, was not retroactive. Judge Fong ruled that the common law of fraudulent conveyances applies to this case because that is the law that applied in Hawaii prior to the enactment of Hawaii's Fraudulent Transfer Act.

■ The common law of fraudulent conveyances, from the Statute of Elizabeth (13 Eliz. Chap. 5 (1570)) is part of the common law of Hawaii. *Achiles v. Cajigal,* 39 Haw. 493 (1952). The common law rule on fraudulent conveyances was that any conveyance made with the intent to hinder, delay, or defraud creditors is void, unless the recipient of the property both acts in good faith and gives value for the property. *Achiles,* 39 Haw. at 496.

■ A fraudulent conveyance can occur even if the debtor is not a party to the conveyance. *Achiles,* 39 Haw. at 499. For example, if a husband causes title to property be placed in his wife's name, the transaction may constitute a fraudulent conveyance. *Achiles,* 39 Haw. at 499; *Middleditch v. Cathcart,* 19 Haw. 410 (1909).

### The Badges of Fraud

■ Direct evidence of whether a person intended to hinder, delay, or defraud his creditors is difficult to obtain. For that reason, the common law of Hawaii recognized certain "badges of fraud" or indicators of fraud, the presence of which indicate that a fraudulent conveyance has occurred. *Achiles,* 39 Haw. at 497; *Sylvester v. Sylvester,* 723 P.2d 1253, 1257 (Alaska 1986) (although no Hawaii court has examined the common law badges of fraudulent conveyance since territorial days, there is no reason to believe that Hawaii will not recognize the badges). Utilization of the badges of fraud is favorable to the creditor because by simply showing the existence of badges of fraud, a creditor's burden is satisfied. Plaintiffs urge the Court to find a fraudulent conveyance upon a showing of the badges alone.

---

**3.** Thereafter, Michael Ross suffered several adverse judgments. Exhibits "50"—"60".

*Pre-existing Versus Subsequent Creditors*

■ This Court finds that the common law of Hawaii makes a distinction in analysis between pre-existing creditors—those creditors whose claims predated the questioned conveyance (*Achiles* ) and subsequent creditors—creditors who became creditors subsequent to the questioned conveyance (*Middleditch* ).[4] Although a pre-existing creditor need only show badges of fraud to establish an inference of fraud, a subsequent creditor must show fraud in fact or actual intent to defraud. 37 Am.Jur.2d, *Fraudulent Conveyances,* §§ 139, 143 (1968); *Lippi v. City Bank,* 955 F.2d 599, 607 (9th Cir.1992) (citing *Metzger v. Lalakea,* 32 Haw. 706 (1933), for Hawaii common law of fraudulent conveyances and subsequent creditors); *Metzger,* 32 Haw. at 720 (subsequent creditor may set aside a conveyance only when debtor conveyed with intent to defraud creditors, the transfer was secret, or the debtor transferred with the intention of entering a new and hazardous business, the risk of which would be placed upon subsequent creditors); *Middleditch,* 19 Haw. 413–14 (husband's purchase of residence in wife's name cannot be attacked by subsequent creditors absent a finding of actual intent to defraud, even though intended for the very purpose of keeping property secure from subsequent claims against husband).

■ Plaintiffs are clearly "subsequent creditors." Michael Ross' debt to Plaintiffs arose after the alleged fraudulent conveyance occurred. Therefore, the Court finds that contrary to the *Achiles* type analysis urged by Plaintiffs, Plaintiffs have a higher burden to satisfy than showing the "badges of fraud." Plaintiffs must prove that the conveyance of the Kealoha Arms was made with actual intent to defraud. Plaintiffs have presented no evidence upon which this Court could make a finding of actual intent to defraud.

■ Even if this Court had utilized the badges of fraud analysis, Plaintiffs still can-

4. The Court notes that Hawaii's Uniform Fraudulent Transfer Act, HRS Chapter 651C–4, has abrogated the common law distinction between pre-existing creditors and subsequent creditors.

not prevail. The eight badges of fraud articulated in *Achiles* are:

(1) The transferor is indebted or insolvent;

(2) The conveyance is general *i.e.,* the debtor's entire estate is diminished, thereby leaving him insolvent;

(3) Consideration for the conveyance is absent;

(4) The conveyance is secret and concealed;

(5) The conveyance is made to a family member or to one of close relationship;

(6) The conveyance is made while a suit against the debtor is pending or threatening;

· (7) The transferee takes the property in trust for the debtor;

(8) The debtor remains in possession, reserves the use and benefit, and deals with the property as his own.

*Achiles,* 39 Haw. at 497.

None of the eight badges of fraud have been proven by Plaintiffs. The transfer of the Kealoha Arms was not to a family member. Badge 5. Annette Ross and Michael Ross were married at the time of the transfer. However, the transfer did not occur between Annette and Michael Ross, but between Mr. Schneider and Annette Ross. Mr. Schneider was the owner of property developed by Michael Ross and is not related to Annette Ross.

Consideration was paid only by Annette Ross. Badge 3. There is no evidence that Michael Ross contributed any funds toward the purchase of the Kealoha Arms.

At the time Annette Ross acquired the Kealoha Arms from Mr. Schneider, Michael Ross was not a judgment debtor. Badge 6. Although three complaints had been filed against Michael Ross from June 30, 1971 through August 1973, it was not until August 13, 1973 that a complaint for money damages was filed against Michael Ross, and it was not until 1977 that Michael Ross incurred an adverse judgment.

The Hawaii common law distinction therefore applies only to conveyances which predate the enactment of HRS Chapter 651C.

Further, Michael Ross was not insolvent or close to insolvency. Badges 1 and 2. To the contrary, the evidence presented at trial suggests that Michael Ross was enjoying a degree of financial success during this time.

There is no evidence that the conveyance of the property was secret or concealed in any way. Badge 4. All transfers were made a matter of public record.

Plaintiffs claim that Michael Ross remained in possession of and dealt with the Kealoha Arms as his own. Badges 7 and 8. In an affidavit in the First Circuit Court of the State of Hawaii dated June 9, 1983, Michael Ross stated that he owned the Kealoha Arms. Exhibit "34". Michael Ross also used the property to secure a loan for himself, Annette Ross, Carlos Robert Read, and T. Lawrence Jett. Exhibit "17". However, Exhibit "17" clearly states that the property is owned by Annette Ross. The Court cannot find that these facts alone are sufficient to prove the presence of Badge 8.

The Court cannot find the presence of any of the eight badges. Therefore, even if the badges of fraud alone were sufficient to prove fraudulent intent, Plaintiff cannot prevail.

*Consideration and the Debtor Spouse's Interest*

■ Finally, this Court takes one more step in its analysis and conclusion that Plaintiffs do not prevail. Because a subsequent creditor is challenging a third person's conveyance to the debtor's wife, the Court must address what interest the debtor's wife has in the property. The Court first looks to Hawaii common law cases. The only Hawaii case which addresses a subsequent creditor's challenge to a conveyance by a third person to the debtor's wife is *Middleditch*. In *Middleditch*, on an interlocutory appeal, the Hawaii Supreme Court found that despite the plaintiff's averments that the debtor had paid for the property which was conveyed by a third person to the debtor's wife, in the absence of actual fraudulent intent, the debtor's wife's title was not subject to challenge by subsequent creditors. *Middleditch*, 19 Haw. 413–14. *See also, Wallace v. Penfield*, 106 U.S. 260, 264, 1 S.Ct. 216, 220, 27 L.Ed. 147 (1882); 37 Am.Jur.2d, *Fraudulent Con-*

*veyances,* § 142 (1968). However, what happens under Hawaii common law if the consideration flowed instead from the debtor's wife? No Hawaii court has addressed this specific issue. Since Hawaii common law has been adopted from the statute of 13 Elizabeth, other court decisions decided thereunder are persuasive. Other courts have clearly decided that to the extent that consideration came from the debtor's wife, the wife's interest may not be reached by a subsequent creditor. *Davis v. Fredericks*, 104 U.S. 618, 26 L.Ed. 849 (1881); *Stoutz v. Huger*, 18 So. 126 (1894); *Homeland Bldg. Co. v. Reynolds*, 49 Cal.App.2d 176, 121 P.2d 59 (1942). *See also*, 37 Am.Jur.2d, *Fraudulent Conveyances*, § 142 (1968); W.W. Allen, Annotation, *Conveyance to Debtor's Spouse*, 35 A.L.R.2d 82–83 (1954). Therefore, this Court finds that irrespective of the fraud analysis and finding, to the extent that Annette Ross gave value for the Kealoha Arms, she is entitled to the Kealoha Arms.

■ Annette Ross testified that the funds used to purchase the Kealoha Arms came from the sale of her business the "House of Boutique", from her earnings as a charm and modelling instructor, and from the sale of California real estate. No evidence was presented to contradict Annette Ross' testimony that the funds used to purchase the Kealoha Arms came from her earnings as a charm and modelling instructor and from prior real estate sales. More importantly, no evidence was presented that the purchase price for the Kealoha Arms came from Michael Ross. Michael Ross received all the compensation he was due for his work on the Kealoha Arms through the sale of the 32 leasehold condominiums and at the completion of the project, was not entitled to any interest in the property. Therefore, the Court finds that Michael Ross did not contribute any funds toward the purchase of the Kealoha Arms and that Annette Ross paid for the Kealoha Arms from her own funds. Because Annette Ross paid full value for the Kealoha Arms, she is entitled to the property.

### CONCLUSION

The Court cannot find that the transfers of the Kealoha Arms occurred with any actual

intent to hinder, delay, or defraud the creditors of Michael Ross. Further, Michael Ross did not contribute any funds toward the purchase of the Kealoha Arms. All consideration for the purchase of the Kealoha Arms came from Annette Ross. Under either conclusion, the conveyance cannot be attacked.

Accordingly, this Court directs that judgment be entered in favor of Defendants.

IT IS SO ORDERED.