In re SERGIO, INC., Debtor.

In re Sergio BATTESTETTI, Debtor.

Scott R. NAKAGAWA, Trustee,

and

Hawaii Leasing, a Hawaii registered limited partnership by and through its attorney-in-fact GECC Hawaii Leasing Corporation, a Hawaii corporation, Plaintiffs,

v.

SERGIO, INC., a Hawaii corporation, aka Sergio Incorporated, Ltd., a Hawaii corporation dba Trattoria, Sergio Battestetti and Cinerama Hawaii Hotels, Inc., a Hawaii corporation, Defendants.

Bankruptcy Nos. 80–00766, 80–00767 and 81–0041.

United States Bankruptcy Court, D. Hawaii.

Dec. 17, 1981.

Joseph M. McKellar, Honolulu, Hawaii, for Battestetti.

Scott Nakagawa, Honolulu, Hawaii, trustee.

Robert A. Rowan, Honolulu, Hawaii, for Hawaii Leasing.

William S. Miller, Honolulu, Hawaii, for secured creditor.

Lloyd Y. Asato, Honolulu, Hawaii, for Cinerama.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

Scott R. Nakagawa, Trustee, and Hawaii Leasing, a limited partnership, by and through its attorney-in-fact, GECC Hawaii Leasing Corporation, a Hawaii corporation, hereafter "Plaintiffs", filed their amended Complaint to Set Aside Fraudulent Transfer on April 10, 1981. Subsequently, the Complaint was further amended to add a theory of constructive trust and violation of the Hawaii Bulk Transfer laws in order to set aside transfers by the above-named Defendants.

Trial was held on September 14, 15, 16, 21 and 22, 1981. Scott R. Nakagawa, the Trustee, represented himself; Hawaii Leasing was represented by Robert A. Rowan; Bank of Hawaii, a secured creditor, was represented by William S. Miller; Cinerama Hawaii Hotels, Inc. was represented by Lloyd Y. Asato; and Sergio Battistetti, Sergio, Inc., Italfoods, Ltd. and Rina Battistetti were represented by Joseph M. McKellar.

Based upon the evidence adduced, the records and memoranda filed herein, and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff Scott R. Nakagawa, hereinafter "Trustee", is the Trustee in bankruptcy for Sergio, Inc., and Sergio Battistetti, Debtors, duly qualified and acting under the Bankruptcy Reform Act of 1978, hereinafter referred to as the "Bankruptcy Code". This action was brought under Sections 544 and 548 of the Bankruptcy Code and the laws of the State of Hawaii.

2. Plaintiff Hawaii Leasing is a registered Hawaii limited partnership which brought this action by and through its attorney-in-fact, GECC Hawaii Leasing Corporation, a Hawaii corporation, doing business in the City and County of Honolulu and Hawaii Leasing is a creditor of both Sergio, Inc. and Sergio Battistetti.

3. Debtor Sergio, Inc., aka Sergio Incorporated, hereafter "Sergio, Inc.", is a Hawaii corporation doing business in the City and County of Honolulu.

4. Italfoods, Ltd. dba Trattoria, hereafter "Italfoods", is a Hawaii corporation doing business in the City and County of Honolulu and is a transferee of substantially all of the assets of Sergio, Inc.

5. Debtor Sergio Battistetti is a resident of the City and County of Honolulu and is the president and sole stockholder of Sergio, Inc.

6. Rina Battistetti is a resident of France, occasionally residing in the City

and County of Honolulu and is the sister of Sergio Battistetti. She is also the president and sole stockholder of Italfoods.

7. Cinerama Hawaii Hotels, Inc., hereafter "Cinerama", is a Hawaii corporation doing business in the City and County of Honolulu and is the owner of the Edgewater Hotel, situate at 2168 Kalia Road, Honolulu, Hawaii.

8. On April 1, 1971, Sergio, Inc. entered into a lease with Cinerama for the Trattoria Restaurant for a period of ten years. Said lease contained provisions which read as follows:

### 21. *Assignment and Subletting by Tenant.*

Tenant agrees that this lease is personal to Serge Battistetti, principal officer and stockholder of Tenant. Landlord reserves the right to terminate this lease in the event of death or incapacity of said Serge Battistetti or relinquishment of management and operational control of Tenant or of the demised premises by said Serge Battistetti. Any sale, assignment, mortgage, sublease or other disposition of this lease or of any interest in the demised premises without the prior written consent of Landlord shall be void. Any disposition of controlling interest in Tenant or of management control or any management or other similar agreement without the prior written consent of Landlord shall be void. Such consent may be withheld by the Landlord for any reason, it being understood that said Serge Battistetti shall control and personally manage the demised premises during the term of this lease.

### 31. *Competition.*

Tenant and Serge Battistetti agree with Landlord not to manage operate or become associated in any manner with a restaurant operation in Honolulu without the prior written consent of Landlord. Landlord agrees that so long as such other restaurant operation does not adversely affect the Trattoria operations, such consent will not be unreasonably withheld, it being the intent that Serge Battistetti, as a condition of this lease and as an inducement to Landlord to enter into this lease with Tenant, shall directly manage the Trattoria Restaurant.

9. On May 31, 1979, as hereafter more fully explained, Sergio Battistetti personally took over the Trattoria Restaurant from Sergio, Inc., allegedly on a month to month lease.

10. Subsequent to its incorporation on September 6, 1979, Italfoods obtained an Assignment of Lease of the Trattoria Restaurant from Sergio, Inc. Hawaii Leasing, Bank of Hawaii and Prudential Insurance, *inter alios*, were not notified of the Assignment.

11. On December 18, 1980, Sergio, Inc. filed its petition in the Bankruptcy Court. Schedule A2 of the schedules filed by Sergio, Inc. shows that Sergio, Inc. is indebted to Hawaii Leasing in the amount of $172,388.61, to Bank of Hawaii in the amount of $115,702.00 and to Prudential Insurance Company of America in the amount of $22,500.00. Said schedule further shows that the amounts owing to Hawaii Leasing and Prudential Insurance Company of America are represented by Judgments obtained in Civil Nos. 57556 and 55104, First Circuit Court, State of Hawaii. Schedules B–1, B–2 and B–3 filed by Sergio, Inc., show that Sergio, Inc. claims to have no assets, real or personal.

12. Hawaii Leasing's complaint in the State Court against both Sergio, Inc. and Sergio Battistetti (Civil No. 57556) was filed on April 2, 1979. Judgment was rendered in said case against both Defendants on August 13, 1979.

13. As of the date of filing of Hawaii Leasing's Complaint, Civil No. 57556, Sergio, Inc. was indebted to Hawaii Leasing, Bank of Hawaii and Prudential Insurance Company of America in the amounts specified in paragraph 11 above.

14. Subsequent to the April 2, 1979 filing of Hawaii Leasing's Complaint, Sergio, Inc. failed to pay its minimum rent for April and its percentage rent for March 1979 to Cinerama.

15. During and prior to April, 1979, Cinerama, through its corporate secretary and attorney, Morio Omori was aware of various creditor problems plaguing Sergio, Inc., including business debts arising out of other restaurant operations at Le Chateau and The Pasta Factory, and the fact that Sergio, Inc. was heavily indebted to Bank of Hawaii.

16. In addition to being the corporate secretary and attorney for Cinerama, Morio Omori was also a business partner and a creditor of Sergio Battistetti, but was not a creditor of Sergio, Inc. Mr. Omori had also been the personal attorney for Sergio Battistetti and Sergio, Inc. at a prior point in time, and according to the records and files of the Department of Regulatory Agencies of the State of Hawaii, Mr. Omori was also an officer and director of Sergio, Inc. as of January, 1979.

17. During April, 1979, Sergio Battistetti had discussions with the personnel of Cinerama regarding both his delinquent rent and his creditor problems.

18. On May 1, 1979, Morio Omori, on behalf of Cinerama, wrote to Sergio Battistetti as president of Sergio, Inc. and purported to give notice of cancellation of Sergio, Inc.'s unrecorded lease dated April 1, 1971. The stated reasons for said cancellation were the failure to pay percentage rent for April and May, 1979, and the continuing financial problems of Sergio Battistetti's other operations.

19. As of May 1, 1979, neither the May minimum rent, nor the April percentage rent were actually delinquent under the terms of Sergio Inc.'s lease; the April percentage rent was not due until May 15, 1979.

20. Subsequent to the receipt of the May 1, 1979 letter from Cinerama, Sergio Battistetti had several discussions with some of the executives of Cinerama. Thereafter, a letter was drafted by Jack Marshall, Vice President of Cinerama, refined by Morio Omori, and adopted by Sergio Battistetti dated May 25, 1979 and sent to Cinerama. By this letter, Battistetti in exchange for a month to month lease, agreed to do the following:

(1) Have Sergio, Inc. vacate the restaurant by May 31, 1979.

(2) Pay all delinquencies to Cinerama for rent and utilities.

(3) Pay a minimum rent of $4,500.00 per month plus 10% of gross receipts in excess of minimum rent.

21. The foregoing proposal by Battistetti was adopted by Jack Marshall of Cinerama on or about May 25, 1979. Then, as of June 1, 1979, Sergio Battistetti operated the Trattoria Restaurant under his own name on a month to month lease.

22. By the letter agreement of May 25, 1979, Sergio, Inc. purported to transfer on May 31, 1979 all its assets, i.e., the Trattoria Restaurant, to Sergio Battistetti. No consideration was paid by Sergio Battistetti to Sergio, Inc. for such purported transfer. No notice of this purported transfer was given to creditors or to the Liquor Commission or to the State or Federal tax authorities.

23. And pursuant to this letter agreement of May 25, 1979, by May 31, 1979, Sergio, Inc. did pay in full all of the delinquencies set forth in Mr. Omori's letter of May 1, 1979.

24. Prior to May 1, 1979, Sergio, Inc. had been continually behind in its rent to Cinerama and had never been evicted. During 1977 and 1978, according to Jack Marshall of Cinerama, Sergio, Inc. was usually $10,000 to $20,000.00 behind in its rent.

25. As of the May 1, 1979 letter from Mr. Omori, Sergio, Inc. was less than $20,000.00 delinquent in its rent. The total of the rents claimed in Mr. Omori's May 1 letter which was actually delinquent as of May 1, totalled approximately $13,000.

26. Notwithstanding the purported agreement to cancel Sergio, Inc.'s lease and transfer of Sergio, Inc.'s liquor license, said lease was never actually terminated. Instead, it was assigned to Italfoods, Ltd. on September 10, 1979. Similarly, Sergio, Inc.'s liquor license was never transferred to Sergio Battistetti, but was transferred

directly from Sergio, Inc. to Italfoods, Ltd. some time subsequent to September 10, 1979.

27. On May 1, 1979, the same day as the Omori eviction letter, Sergio, Inc. paid to its president and sole stockholder, Sergio Battistetti, the sum of $14,416.34 which was claimed to be payment for an antecedent debt allegedly arising out of a loan made by Mr. Battistetti to Sergio, Inc. and derived from profits of another restaurant operation, The Lahaina Treehouse, also owned by Sergio Battistetti.

28. The Lahaina Treehouse, however, was not a profitable operation and was in fact indebted itself to Sergio, Inc. for sums in excess of $70,000.00, which Sergio, Inc. had already written off as bad debt losses on its Federal income tax return. See Exhibits P–11 and P–12.

29. On August 7, 1979, Hawaii Leasing obtained an order granting summary judgment against both Sergio, Inc. and Sergio Battistetti. On August 9 and 10, 1979, Sergio Battistetti withdrew from Sergio, Inc.'s bank account $8,500.00 in cash.

30. On August 13, 1979, Hawaii Leasing obtained Judgment in the amount of $191,230.99 against both Sergio Battistetti and Sergio, Incorporated, jointly and severally.

31. Within seven days of the aforesaid Judgment, Sergio Battistetti caused to be opened a new bank account for the operating revenues of the Trattoria Restaurant under the name "Meltek Enterprises, Ltd.", being Account No. 31–057035, at First Hawaiian Bank, and immediately transferred $9,452.26 from Sergio, Inc.'s bank account to the new Meltek account. From August 20 to August 31, 1979, deposits totalling $67,645.91 were made into the Meltek account from Trattoria operating revenues. From September 5 through September 13, 1979, additional deposits of $25,525.14 were made into the Meltek account by Sergio Battistetti from Trattoria operating revenues.

32. As admitted by Battistetti, Meltek Enterprises, Ltd. was a "shell corporation" whose alleged officers were Battistetti and his floor manager, Bernd Smeisser. The purpose of creating the Meltek account was to avoid creditor process by Hawaii Leasing.

33. As testified to by Sergio Battistetti, Sergio, Inc., Meltek and Sergio Battistetti are one and the same thing.

34. In late August, 1979, Rina Battistetti arrived in Honolulu from France. And on August 30, 1979 and September 4, 1979, payments were made from Trattoria operating revenues through the Meltek account to European World Travel for sums of $1,000.00 and $919.00.

35. On September 6, 1979, Italfoods, Ltd. was incorporated for the sole purpose of accepting the lease and liquor license of the Trattoria Restaurant from Sergio, Inc., in whose name the lease and liquor license were still held despite the alleged transfers in May and August, 1979 to Sergio Battistetti and Meltek Enterprises, respectively.

36. The only director of Italfoods, Ltd. was Rina Battistetti. The only officers were Rina Battistetti and Bernd Smeisser, the floor manager of the Trattoria Restaurant and one of the alleged officers of Meltek Enterprises. Although named as president of Italfoods, Ltd., Rina Battistetti performed no functions or duties normally associated with the president of a corporation. Rina Battistetti had no prior experience as a corporate officer or as proprietor of any corporation, and no restaurant experience at all. She had spent twenty-eight years as a secretary in a French company, handling filing and typing chores. Her last salary was $12,000.00 per year.

37. Four days after Italfoods' incorporation, on September 10, 1979, the lease of Sergio, Inc. was assigned to Italfoods.

38. Joseph McKellar acted as attorney for both parties to the Assignment of Lease, i.e., Sergio, Inc. and Italfoods, Ltd. Mr. McKellar also represented Sergio Battistetti and Rina Battistetti, the principal officers and sole stockholders of both corporations. Mr. McKellar also represented Meltek Enterprises, to the extent it existed.

39. At the time of the transfer of Sergio, Inc.'s lease and liquor license to Italfoods, both Sergio, Inc. and Sergio Battistetti were indebted or insolvent. Neither Sergio, Inc. nor Sergio Battistetti had any other assets that were not mortgaged or encumbered beyond their value; no notice of transfer was given to creditors or State or Federal tax authorities.

40. At the time of the September 10, 1979 transfer of Sergio, Inc.'s lease to Italfoods, Ltd., Rina Battistetti was aware of Sergio, Inc.'s and Sergio Battistetti's creditor problems, including specifically, their debts to Bank of Hawaii.

41. At the time of the transfer to Italfoods, the Trattoria Restaurant was grossing in excess of $1,000,000.00 per year, and had a fair market value as an on-going concern of $400,000.00 to $450,000.00, according to the testimonies of Sergio Battistetti and Professor Joseph Miccio, an expert witness.

42. According to a Bill of Sale allegedly dated and signed by Sergio Battistetti on September 9, 1979, the consideration paid by Italfoods for the transfer of all of Sergio, Inc.'s right, title and interest in the Trattoria Restaurant, was $110,000.00. However, as shown by the Affidavit of Joseph M. McKellar, the attorney for all parties to the Bill of Sale, the aforesaid Bill of Sale was not even prepared until February 12, 1981, and no other Bill of Sale was, prior to that date, prepared on behalf of the debtor corporation. Accordingly, the Court finds the alleged Bill of Sale to have been fabricated by Sergio Battistetti after the fact.

43. Moreover, as testified to by Sergio Battistetti, the alleged assumption of liabilities set forth in the Bill of Sale, comprising $85,000.00 of the $110,000.00 stated consideration, was not paid as consideration for the transfer, but was paid out of operating profits of the Trattoria Restaurant solely as a matter of economic necessity in order to appease its landlord, Cinerama, its trade purveyors and certain Federal or State tax authorities.

44. The only cash consideration set forth in the Bill of Sale, or testified to by any of the defendants, was the sum of $25,000.00, allegedly comprised of a $15,000.00 deposit by Rina Battistetti into the Italfoods' checking account, a payment of $5,000.00 to Sergio, Inc. for inventory, and payment of $5,000.00 to Sergio Battistetti for services rendered. The $5,000.00 check allegedly paid to Sergio Battistetti was never even cashed and no deposits to Rina Battistetti's account were made to cover the same. Moreover, no evidence was presented as to the source of the alleged deposits by Rina Battistetti, and the Court notes that Sergio Battistetti withdrew over $25,000.00 in cash from Trattoria funds between May and August, 1979, which was never fully accounted for by Defendants.

45. Even if Rina Battistetti paid all or a portion of the remaining $20,000.00, she was fully reimbursed either in the form of direct payments to her personal bank account or by payments of her personal mortgage at Island Colony Apartment 1702.

46. On July 25, 1980, Rina Battistetti received and deposited into her personal checking account a check from Italfoods in the amount of $5,000.00 with the notation "reimbursement of officer" thereon. On December 16, 1980, Rina Battistetti received another deposit in her personal checking account of $571.85 from the Italfoods' corporate checking account. From August 12, 1980 through September, 1981, Italfoods made monthly mortgage payments on Island Colony Apartment 1702 in the total sum of $13,047.16. Rina Battistetti also received at least two, and apparently three, all-expense paid trips to Hawaii from France from the revenues of the Trattoria Restaurant.

47. There was no bona fide consideration paid by Rina Battistetti or Italfoods, Ltd. for the transfer of Sergio, Inc.'s assets.

48. As part and parcel of the transfer of Sergio, Inc.'s lease to Italfoods, Ltd., Sergio Battistetti was given a power of attorney to operate the restaurant and to execute documents on behalf of it and its sole stockholder, Rina Battistetti. Sergio Battistetti was

also given the power to execute and sign all checks on all corporate accounts of Italfoods, including those located at First Hawaiian Bank, Merrill, Lynch, Pierce, Fenner & Smith, and American Security Bank, as well as the personal checking account of Rina Battistetti. Battistetti was also given carte blanche permission to use any and all vehicles and to be reimbursed for any and all expenses incurred in operating the same. Battistetti was also provided with free food, free liquor and free rent at a residence situated at 1351 Laukahi Street, which was purchased with the operating revenues of the Trattoria Restaurant.

49. Sergio Battistetti not only had explicit authority and explicit permission to operate the restaurant, sign all corporate documents, sign all corporate checks, use all corporate vehicles and to stay at the residence purchased with corporate funds, but did in fact sign all, or the majority of all checks and instruments, operate the restaurant, use the corporate vehicles and stay at the home purchased with corporate funds.

50. The house referred to above is located at 1351 Laukahi Street, Tax Map Key No. 2-3-5-52-32, and was originally purchased pursuant to a Deposit Receipt Offer and Acceptance executed by Sergio Battistetti on May 16, 1980. On June 24, 1980, pursuant to instructions from Battistetti's attorney, Joseph McKellar, escrow was instructed to place title in the name of Rina Battistetti, Sergio Battistetti's sister. Upon closing, said property was vested in the name of Rina Battistetti pursuant to a sub-agreement of sale dated July 21, 1980, between Miss Elizabeth Meacham and Rina Battistetti, and executed by Sergio Battistetti as the attorney-in-fact for Rina Battistetti.

51. The down payment of $71,699.19 on the above residence was made by Italfoods, out of the operating profits of the Trattoria Restaurant. In addition, renovation costs totalling $75,122.00 were paid for by Italfoods out of the operating profits of the Trattoria between August, 1980 and August, 1981. In addition, monthly mortgage payments totalling $18,798.56 were made by Italfoods out of the Trattoria Restaurant's operating profits between September, 1980 and May 31, 1981.

52. According to Norman Brand, Italfoods' tax accountant, all renovation costs and monthly payments at 1351 Laukahi Street were categorized as either loans or consulting fees to Sergio Battistetti. In fact, the renovation costs were deducted from Italfoods' 1979-1980 income tax returns as "consulting fees" paid to Sergio Battistetti. No such payments were ever treated as either dividends or salaries to Rina Battistetti.

53. Although Rina Battistetti testified that she paid $39,000.00 in advance prepayments of principal on the Laukahi Street Agreement of Sale out of her personal checking account at First Hawaiian Bank, Waikiki Branch, Account No. 31-488338, the bank records and cancelled checks from said account refute such testimony and show no such payments.

54. At the time Rina Battistetti allegedly made prepayments of principal towards the Agreement of Sale on the residence at 1351 Laukahi Street in December, 1980, and July, 1981, she was not only aware of Sergio, Inc.'s and Sergio Battistetti's creditor problems, but was already named as a participant or co-conspirator with regard to the alleged fraudulent transfers at issue herein in Civil No. 57556, First Circuit Court, State of Hawaii. On April 2, 1981, she was made a co-defendant in the present action.

55. Italfoods also paid, from the operating profits of the Trattoria Restaurant, all payments, including the down payment, the monthly loan payment, and the repairs and maintenance on a 1980 Mercedes Turbo-Diesel automobile, which was purchased in May, 1980, for the use and benefit of Sergio Battistetti. Italfoods also paid out of the operating profits of the Trattoria Restaurant, the rental payments and the repair and maintenance costs of a 1976 Jaguar automobile for the use and benefit of Sergio Battistetti. The aforesaid payments totaled $31,084.29 between September, 1979 and May 31, 1981.

56. At the time of the September 10, 1979 assignment of Sergio, Inc.'s lease to Italfoods, Ltd., Sergio Battistetti was already negotiating with and had obtained from Cinerama an agreement to provide a new lease to Italfoods for a period of five to ten years.

57. Within four days of the assignment of lease from Sergio, Inc. to Italfoods, Morio Omori had recommended to his corporate superiors at Cinerama that Italfoods be granted a new lease on the same terms and conditions as the Sergio, Inc. lease, with an increased monthly minimum payment. The stated reason for said recommendation was to avoid involvement with Sergio, Inc.'s and Sergio Battistetti's creditors, while continuing to have Sergio Battistetti operate the restaurant.

59. Thereafter, on December 20, 1979, Cinerama, Sergio, Inc., Italfoods and Sergio Battistetti agreed to a simultaneous cancellation of Sergio, Inc.'s lease and the issuance of a new lease to Italfoods. Sergio Battistetti signed the new lease for Italfoods as the attorney-in-fact for his sister, Rina Battistetti.

60. Under the new lease, the minimum rent was increased to $7500 a month. In addition, the new lease contained the following provisions:

21. *Assignment and Subletting by Tenant.*

Tenant agrees that this lease shall be effective only if Serge Battistetti shall be a stockholder, principal officer, full time employee or consultant of Tenant. Landlord reserves the right to terminate this lease in the event Serge Battistetti fails to or is unable to devote his full time services to Tenant at the demised premises for any reason, including long term incapacity. Any sale, assignment, mortgage, sublease or other disposition of this lease or of any interest in the demised premise without the prior written consent of Landlord shall be void. Any disposition of controlling interest in Tenant or of management control or any management or other similar agreement without the prior written consent of Landlord

shall be void. Such consent may be withheld by Landlord for any reason, it being understood that said Serge Battistetti shall devote his full time services to Tenant's business during the term hereof.

61. Paragraph 6 of the lease dated April 1, 1971 between Cinerama Hawaii Hotels, Inc. and Sergio, Inc. provides that the furniture, fixtures and equipment listed in Exhibit B to the lease shall be returned to the landlord at the end of the lease term. Said paragraph also provides that Sergio, Inc. shall supply all furniture, fixtures and equipment required for its own use in the demised premises. Said lease also provides that alterations and improvements permanently affixed to the demised premises by Sergio, Inc. shall become property of the landlord upon termination of the lease. The lease finally provides that Sergio, Inc. is entitled to all furniture, fixtures, stock, merchandise and all other personal property not listed in Exhibit B thereof.

62. According to the testimony of Sergio Battistetti, during the time that Sergio, Inc. operated the Trattoria Restaurant, Sergio, Inc. purchased approximately $100,000.00 of furniture, fixtures and equipment.

63. While Sergio, Inc. operated the Trattoria Restaurant, it depreciated the value of furniture and fixtures, machinery and equipment, office equipment and automobiles for Federal and State income tax purposes.

64. In October, 1977, Sergio Battistetti, as president of Sergio, Inc., gave a list of "unencumbered furniture, fixtures and equipment" to Bank of Hawaii in order to induce it to extend credit to Sergio, Inc.

65. As of Sergio, Inc.'s last reported financial statements in September, 1978, substantial amounts of undepreciated furniture, fixtures and equipment remained listed on Sergio, Inc.'s balance sheet. Said assets, however, do not appear on Italfoods' financial statements commencing September, 1979.

66. At all times from April, 1979 through December 20, 1979, the corporate personnel of Cinerama Hawaii Hotels, in-

cluding Michael R. Forman, William Forman, Jack Marshall, Roy Kelley and Morio Omori, were aware of Sergio, Inc.'s and Sergio Battistetti's creditor problems and were desirous of avoiding any involvement of the Trattoria Restaurant with such creditor problems and were motivated by this desire in agreeing to the various transactions, transfers and changes of corporate ownership of the Trattoria Restaurant.

67. During its first year of operating the Trattoria Restaurant, *i.e.*, from September 10, 1979 through August 31, 1980, Italfoods, Ltd. grossed $1,196,529.10, and made an operating profit of $106,555.41. During this period, Italfoods made rent payments to Cinerama totalling $105,344.01.

68. In the first nine months of its second fiscal year, *i.e.*, from September 1, 1980 through May 31, 1981, Italfoods, Ltd. had gross revenues from Trattoria Restaurant operations of $888,927.33, and made a net operating profit of $96,483.57. During this period of time, Italfoods paid the sum of $82,253.16 in rent to Cinerama Hawaii Hotels. *See* P–7, pages 340–341.

69. During the twenty-one months following the transfer of the Trattoria Restaurant to Italfoods, Ltd., Italfoods made various payments to personal creditors of Sergio Battistetti, including Liberty Bank and Finance Factors, in addition to the aforesaid payments for the Mercedes, the Jaguar and the house at 1351 Laukahi Street; however, no payments whatsoever were made on Sergio, Inc.'s and Sergio Battistetti's debts to Hawaii Leasing or Prudential Insurance Company of America.

70. Defendants have testified to no valid business purpose for any of the transfers of ownership or changes in corporate name from May 31, 1979 to December 20, 1979, other than to hinder, delay or avoid creditors.

71. The transfer of the Trattoria Restaurant from Sergio, Inc. to Italfoods, Ltd. in September, 1979, was a transfer of all or substantially all of the assets of Sergio, Inc., and was not in the ordinary course of Sergio, Inc.'s business.

72. The principal business of the Trattoria Restaurant was the sale of merchandise from stock.

73. Prior to taking possession of the goods of the Trattoria Restaurant, Italfoods, Ltd. and Sergio, Inc. did not give notice to Hawaii Leasing, Bank of Hawaii and Prudential Insurance Company of America that the bulk transfer was about to be made or provide any other information required under Hawaii Revised Statutes § 490:6–107.

74. In connection with the transfer of the Trattoria Restaurant from Sergio, Inc. to Italfoods, Ltd., Italfoods, Ltd. did not require Sergio, Inc. to furnish a list of its existing creditors signed and sworn to or affirmed by Sergio, Inc. or its agent.

75. Italfoods, Ltd. did not preserve a list of the existing creditors of Sergio, Inc. and a schedule of the property transferred from Sergio, Inc. to Italfoods, Ltd. for a period of six months following the transfer.

These Findings of Fact, insofar as they are Conclusions of Law, are incorporated by reference in the Conclusions of Law as hereafter stated.

## CONCLUSIONS OF LAW

1. Plaintiff Scott R. Nakagawa, as the duly appointed and qualified Trustee in Bankruptcy of Sergio, Inc. and Sergio Battistetti, is vested with the power to set aside fraudulent conveyances and preferential transfers under Sections 544, 548 and 550 of the Bankruptcy Code.

2. This action was instituted within two years of the appointment of the Trustee and within all applicable state statutes of limitations. *See* Sections 657–1, 657–3.5, 657–20 and 490:6–111, Hawaii Revised Statutes ("H.R.S.").

3. Under 11 U.S.C. § 548, the trustee is entitled to avoid any transfer of the debtor's property within one year before the filing of the petition if such transfer was made with the actual intent to hinder, delay or defraud creditors or if made for less than equivalent value while the debtor was insolvent or was rendered insolvent thereby.

4. Under 11 U.S.C. § 544, the trustee is entitled to avoid any transfer avoidable by a hypothetical lien creditor or an actual unsecured creditor under applicable state law.

5. Transfers avoidable by lien creditors and unsecured creditors include, *inter alia,* those that are in violation of Hawaii's Bulk Transfer laws, Chapter 490, Article 6, H.R.S., as well as those found to be fraudulent conveyances under the common law of Hawaii.

6. The requirements of proving a common law fraudulent conveyance in the State of Hawaii are set forth in the Hawaii Supreme Court's decision in *Achiles v. Cajigal,* 39 Hawaii 493 (1952).

7. A fraudulent conveyance is one made with the intent to hinder, delay or defraud creditors. Such fraudulent intent need not be proven by direct evidence or admission, but can be proven through certain objective indicia of fraud, commonly referred to as badges of fraud. *Achiles v. Cajigal, supra.*

8. The recognized badges of fraud under *Achiles v. Cajigal, supra,* are as follows:

a. The transferor is indebted or insolvent;

b. The conveyance is general, *i.e.,* that the debtor's entire estate is diminished, thereby leaving him insolvent;

c. Consideration for the conveyance is absent;

d. The conveyance is secret and concealed;

e. The conveyance is made to a family member or to one of close relationship;

f. The conveyance is made while a suit against the debtor is pending or threatening;

g. The transferee takes the property in trust for the debtor;

h. The debtor remains in possession, reserves the use and benefit, and deals with the property as his own.

9. The court finds the oral testimony of Sergio Battistetti and Rina Battistetti less than credible in several material respects, oftentimes contradicted or impeached by the bank records, accounting records, written memoranda and prior sworn testimony of said witnesses. Accordingly the court places primary reliance on the written evidence in reaching its conclusions herein.

10. In the instant case, all of the badges of fraud as above set forth are in existence:

a. At all points in time from April, 1979 through September, 1981, Defendants Sergio, Inc. and Sergio Battistetti were indebted to Hawaii Leasing, Bank of Hawaii and Prudential Insurance Company of America. Sergio Battistetti was also personally indebted to other creditors.

b. Each conveyance or transfer allegedly or actually made from May 31, 1979 through September 10, 1979 was general, *i.e.,* the transferor's entire estate was diminished, thereby leaving it insolvent.

c. Bona fide consideration was completely absent at each transfer or conveyance allegedly or actually made from May 31 through September 10, 1979.

d. Each transfer or conveyance allegedly or actually made from May 31, 1979 through September 10, 1979 was secret and concealed in that creditors of the transferor were never notified of the transfer or conveyance.

e. Each transfer actually or allegedly made from May 31, 1979 to September 10, 1979 was made to a family member or to one in a close relationship.

f. At all points in time from April, 1979 through September, 1981, lawsuits, claims and demands were pending and/or threatening against Sergio, Inc. and Sergio Battistetti.

g. The assignment of lease dated September 10, 1979, was made to Italfoods, Ltd. with the understanding that it would hold the property transferred in trust for Sergio Battistetti, and Sergio Battistetti remained in possession and control of the property, reserved the same for his use and benefit, and dealt with the property as his own.

h. At all points in time from April, 1979 through September, 1981, Defendant Sergio

Battistetti dealt with the operational revenues and profits of the Trattoria Restaurant and Sergio, Inc. as if they were his own personal funds.

11. Each conveyance or transfer allegedly or actually made from May 31, 1979 through December 20, 1979 was made with the actual intent to delay, hinder and avoid the creditors of Sergio, Inc. and Sergio Battistetti.

12. Each of the transfers and conveyances allegedly or actually made from May 31, 1979 through December 20, 1979, were fraudulent as to the creditors of Sergio, Inc.

13. The December 20, 1979 lease from Cinerama Hawaii Hotels, Inc. to Italfoods, Ltd. was part of the series of fraudulent conveyances commencing in April, 1979, and was agreed to in principle or at least contemplated as of the September 10, 1979, Assignment of Lease.

14. The December 20, 1979 lease was executed within one year of the filing of the petition.

15. Defendants Italfoods, Ltd. and Rina Battistetti were aware of, participated in, and conspired with Defendants Sergio, Inc. and Sergio Battistetti with regard to avoiding the creditors of Sergio, Inc. and Sergio Battistetti and with the purpose of avoiding, hindering and delaying such creditors.

16. The furniture, fixtures and equipment located in the Trattoria Restaurant, other than those items listed in Exhibit B to the lease between Sergio, Inc. and Cinerama, are the property of Sergio, Inc.

17. The April 1, 1971 lease specifically provided that it is personal to Sergio Battistetti, and Mr. Battistetti agreed not to manage, operate or become associated in any manner with a restaurant operation in Honolulu without prior written consent of Landlord, Cinerama.

18. The Court finds the April 1, 1971 lease to be a personal service contract which cannot be assumed by the Trustee.

19. However, this April 1, 1971 lease which had been assigned to Italfoods on September 10, 1979, was cancelled on December 20, 1979, on which date Cinerama entered into a new lease with Italfoods. This December 20, 1979 lease provided that it shall be effective only if Sergio Battistetti shall be "a stockholder, principal officer, full time employee or consultant of Italfoods" and that it was understood "that said Sergio Battistetti shall devote his full time services to Tenant's business during the term hereof."

20. The December 20, 1979 lease appears to provide that, whether Sergio Battistetti be a stockholder, principal officer, full time employee or consultant of Italfoods, he must devote full time services to Italfoods' business during the term of the lease.

21. The facts show that Sergio Battistetti has never devoted his full time services to Italfoods. Instead, he has devoted only about 20 hours a week to the business of Italfoods as a consultant. Mr. Battistetti has never been a stockholder, principal officer or full-time employee of Italfoods. Cinerama made no effort to make certain that Sergio Battistetti spent full time on the business of Italfoods. Cinerama has been receiving the minimum rent which had been increased from $4500.00 in the April 1, 1971 lease to $7500.00 in the December 20, 1979 lease, and the percentage rent it had bargained for in the December 20, 1979 lease; thus Cinerama has been satisfied.

22. In discussing personal contracts, *Collier on Bankruptcy*, states whether or not a contract involves personal skill, trust or confidence sometimes involves close distinctions, depending upon the nature of the subject of the contract, the circumstances of the case and the intention of the parties. 2 *Collier on Bankruptcy* ¶ 365.05, p. 365–34 (15th ed. 1980).

23. By their actions, Italfoods and Cinerama did not consider this December 20, 1979 to call for the personal skills and services of Sergio Battistetti. Sergio Battistetti was not a stockholder, principal officer or full time employee of Italfoods. Sergio Battistetti served as a consultant only on a part-time basis.

24. Even though Sergio Battistetti served only as a part-time consultant to

Italfoods, the business of Trattoria Restaurant prospered. As Professor Miccio had testified, though Mr. Battistetti played a key role in the early development of the Trattoria Restaurant around 1971, he was no longer the key to the success of the Trattoria Restaurant.

■ 25. And Cinerama, because it was receiving the minimum rent and the percentage rent it had bargained for in the lease, did not care whether or not Sergio Battistetti was devoting full time to the Trattoria Restaurant. Thus, Cinerama did not consider this December 20, 1979 lease to be· a personal service contract. Even if Cinerama had originally contemplated this lease to be a personal service contract, by its action Cinerama waived any requirement calling for the personal services of Sergio Battistetti and is now estopped from claiming this lease to be one calling for the personal services of Sergio Battistetti.

■ 26. Any provision of Cinerama's December 20, 1979 lease or of the July 21, 1980 Agreement of Sale between Rina Battistetti and Elizabeth Meacham purporting to allow the lessor or vendor to terminate on the basis of the lessor's or vendee's insolvency or bankruptcy or the appointment of the trustee herein is invalid and of no force or effect under 11 U.S.C. § 365(e).

■ 27. The purchase of assets, including the 1980 Mercedes Turbo-Diesel automobile and the residence at 1351 Laukahi Street, were made with the operating profits of the Trattoria Restaurant, and as such, are the property of the estate of Sergio, Inc. under 11 U.S.C. §§ 550 and 551.

28. The purported transfer of the automobile and Laukahi residence to Italfoods and Rina Battistetti, while reserving the use and benefit of the same to Sergio Battistetti, are part of the fraudulent conveyance voidable under 11 U.S.C. §§ 544 and 548.

■ 29. The Court finds no credible evidence that Defendant Rina Battistetti contributed any of her own personal funds toward the purchase of the residence at 1351 Laukahi Street and further finds that she actively participated in the fraudulent conveyances herein. For both of these reasons, the Court concludes that Rina Battistetti has no valid claim against the bankrupt estate of Sergio, Inc. for reimbursement or otherwise, under 11 U.S.C. § 550.

■ 30. The Trustee is entitled to set aside and avoid each of the transfers and conveyances made from May 31, 1979 to date, and to revest all assets so conveyed or transferred and all assets purchased with the proceeds of such fraudulent transfers to the estate of Sergio, Inc. under 11 U.S.C. §§ 544, 548, 550 and 551 and the laws of the State of Hawaii.

31. The Trustee is entitled to impose a constructive trust or equitable lien upon all assets or property fraudulently conveyed as well as all property purchased with the proceeds of such fraudulent transfers and conveyances under 11 U.S.C. § 544; *Lee v. Wong*, 57 Hawaii 137, 552 P.2d 635 (1976).

32. The transfer of the Trattoria Restaurant and the lease to the premises of the restaurant are also subject to the bulk transfer provisions contained in Chapter 490, Article 6, H.R.S.

■ 33. The bulk transfer of the Trattoria Restaurant from Sergio, Inc. to Italfoods, in September, 1979, did not comply with the notice requirements contained in H.R.S. § 409:6–107, and did not comply with the property schedule and creditor list requirements contained in H.R.S. § 490:6–104.

34. As a result of such noncompliance with the provisions of the bulk transfer laws, the transfer is ineffective against any creditor of the transferor, Sergio, Inc. *See* H.R.S. § 490:6–105.

■ 35. Under 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor in property that is voidable under applicable (state) law by a creditor holding an unsecured claim. Thus, under § 544(b) of the Bankruptcy Code, the trustee may assert the rights of any creditor that was not given notice of the bulk transfer of the Trattoria Restaurant from Sergio, Inc. to Italfoods, Ltd.

36. Based upon the foregoing, the Trustee is entitled to:

a. A garnishee order directed to the holders of all funds heretofore garnished to pay said funds over to the Trustee for deposit with the estate of Sergio, Inc.;

b. To an order directed to Sergio Battistetti and Italfoods, and if necessary, to the U. S. Marshall to turn over the 1980 Mercedes Turbo-Diesel automobile to the Trustee for liquidation;

c. An order directed to Rina Battistetti and Elizabeth Meacham and all other parties claiming an interest or title to the property at 1351 Laukahi Street, to assign all right, title and interest of Rina Battistetti to the Trustee for liquidation at the earliest reasonable date;

d. To an order directed to Italfoods, Ltd. and Cinerama Hawaii Hotels, Inc. assigning to the Trustee all right, title and interest of Italfoods in and to the Trattoria Restaurant, including, but not limited to: the lease dated December 20, 1979, the liquor license covering such premises, the existing inventory and accounts receivable of Italfoods, and all furniture, fixtures and equipment not listed in Exhibit B to the Sergio, Inc. lease of April 1, 1971, for the purpose of liquidation, by assignment of lease or otherwise;

e. The Trustee is further directed to make monthly payments out of any available funds to the Agreement of Sale at 1351 Laukahi Street and to make rental payments and other necessary payments to keep the Trattoria Restaurant in operation, if possible, until such time as the sale of these assets can be accomplished;

f. If the proceeds from liquidation of the aforementioned assets are insufficient to pay the claims of the creditors of Sergio, Inc., the Trustee is directed to use reasonable and diligent efforts to locate additional assets or income, if any, of Sergio, Inc. for payments of creditors' claims;

g. If the proceeds of the liquidation of the aforementioned assets are more than sufficient to pay the creditors of Sergio, Inc., the Trustee is directed to apply the surplus, if any, to the estate of Sergio Battistetti as representing the remaining value of Sergio Battistetti's stock in Sergio, Inc.

39. The Court concludes that there has been no proof of "unwarranted harrassment", "callous disregard of the rights and interests of the Defendants" or attempt to "interfere intentionally and maliciously in bad faith with" any contractual relationship of Defendants as alleged in Defendants' counterclaims, and, accordingly, it is hereby ordered, decreed and adjudged that Defendants take nothing on their counterclaims and that judgment be entered in favor of Plaintiffs.

Let Judgment be entered accordingly.